UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

BROOKE BALCHAN,

                 Plaintiff,

          -against-

CITY SCHOOL DISTRICT OF NEW ROCHELLE;
LAURA FEIJOO, former Superintendent; ALEX
MARRERO, Interim Superintendent; PETER SCORDO,
Deputy Superintendent; ANA RELUZCO, Executive
Administrator for Human Resources; AMY MOSEHLI,
member of the Board of Education; RYAN REED, Assistant
Superintendent of Human Resources; JACKIELYN
MANNING-CAMPBELL, Assistant Superintendent of
Student Services,

                 Defendants.

**<u>COMPLAINT</u>**

**ECF CASE**

21 Civ. ___ (  ).

**JURY TRIAL DEMANDED**

Plaintiff BROOKE BALCHAN by her attorneys, GLASS HARLOW & HOGROGIAN LLP,

as and for her Complaint against Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action seeking monetary and equitable relief based upon

Defendants' violations of 42 U.S.C. Section 1983 and the New York Civil Service Law Section 75-b

(hereinafter "CLS § 75-b"), as a result of maltreatment and retaliatory actions taken against her after

she raised matters of a public concern regarding health and safety while serving as the Medical

Director employed by Defendant City School District of New Rochelle.  Plaintiff also brings this

action for her rights under the Federal Family and Medical Leave Act.

2.     Dr. Balchan believes that current District leadership has wrongfully taken actions

against her because (1) she engaged in protected speech by vocalizing opposition to District leadership

about health and safety matters of public interest, (2) exercised her rights under the Family Medical

Leave Act.

3.      Plaintiff seeks economic, compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal and state law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

5.      This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the City School District of New Rochelle is located at 515 North Avenue, New Rochelle, NY 10801.

6.      This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367(a).

## PARTIES

8.      Plaintiff is a resident of the County of Westchester and the State of New York.

9.      At all times relevant herein, Plaintiff was a "public employee" of Defendant City School District of New Rochelle within the meaning of New York State Civil Service Law § 75-b(1)(b).

10.      At all times relevant herein, Defendant City School District of New Rochelle ("the District") was a "public employer" within the meaning of New York State Civil Service Law § 75-b(1)(a).

11.      At times relevant herein, Defendant Laura Feijoo was the former Superintendent of Schools employed by the District from November 1, 2019 through October 6, 2020.   She is sued in both her official and individual capacities.

12.      At all times relevant herein, Defendant Alex Marrero is the Interim Superintendent of Schools since October 2020.  He was originally hired as the Assistant Superintendent of Curriculum

2

and Instruction in January 2020 and was named acting Superintendent in September 2020.  He is sued in both his official and individual capacity.

13.     At all times relevant herein, Defendant Peter Scordo is the current Deputy Superintendent of Schools.  Mr. Scordo has held three newly created positions since his hiring in July 2019.  His current appointment started in September 2020. Prior to that, he was appointed as Human Resources Executive Assistant to the Superintendent in July 2019, and Executive Assistant for Central Operations in July 2020.  During the 2019-2020 school year, he also was designated by the Board of Education as the Human Rights Coordinator and Affirmative Action Officer, but upon information and belief, no longer serves in that role in the 2020-21 school year.  He is sued in both his official and individual capacity.

14.     At all times relevant herein, Defendant Ana Reluzco is the current Executive Administrator for Human Resources and Pupil Personnel Services and designated by the Board of Education as one of two District Human Rights Coordinators for the 2020-21 school year.  Ms. Reluzco has held three newly created positions since her hiring in August 2019.  Her current appointment started in July 2020.  Prior to that, she was appointed as Deputy Assistant to the Human Resources Executive Assistant to the Superintendent in August 2019, and then to a newly created Civil Service title of Director of Human Resources in September 2019.  She is sued in both her official and individual capacity.

15.     At all times relevant herein, Defendant Amy Mosehli is a member of the Board of Education since 2018, serving as Vice President during the 2018-19 school year and President during the 2019-20 school year.  She is sued in both her official and individual capacity.

16.     At all times relevant herein, Defendant Ryan Reed is the Assistant Superintendent of Human Resources employed by the District since June 2020 and designated by the Board of Education as the District's Affirmative Action Officer and one of two Human Rights Coordinators and for the 2020-21 school year.  He is sued in both his official and individual capacity.

3

17.     At all times relevant herein, Defendant Jackielyn Manning-Campbell is the Assistant Superintendent of Student Services employed by the District since December 2020, filling a position left vacant due to retirement of her predecessor, and is Plaintiff's direct supervisor.   She is sued in both her official and individual capacity.

## STATEMENT OF FACTS

18.     Plaintiff Dr. Balchan began her employment with the District on or about July 18, 2017, as the Medical Director for the District.  The District office is located at City Hall, 515 North Avenue, New Rochelle, New York 10801.

19.     As the Medical Director, Dr. Balchan's responsibilities include, but are not limited to: direct, coordinate and supervise mandated health services for the District's students and to advise on health matters affecting the District, the students and the staff; assure compliance with State and Federal Laws pertaining to health requirements, Commissioner's Regulations, County Health Office mandates, Board of Education (BOE) policies, regulations of the Superintendent; interpret Public Health Laws governing control of communicable diseases and establish procedures governing the exclusion and readmission of pupils with infectious and/or contagious diseases; supervise the procedures for immunization requirements and monitor any epidemics that occur; monitor all procedures regarding sports restrictions; and establish and monitor the use of procedures for injuries or emergency illnesses of any student or staff.  In addition, Dr. Balchan sits on the Westchester County Department of Community Mental Health Trauma Subcommittee and has facilitated community and staff discussions regarding the film *Resilience* and the impact of trauma on the lifespan.  She is also a member of the Solutions to Suspension Taskforce, District-wide Wellness Committee, and a co-chair of the Head Injury/Concussion Management Team. Since April 2012, Dr. Balchan has filled similar roles as Medical Director/consulting physician in other school districts throughout Westchester County (including Mount Vernon, SW BOCES, Greenburgh Central).  Dr. Balchan's dream was to bring her

4

expertise to her own city where she resides and remain in the District's Medical Director position until retirement age, like her predecessor, who held the coveted unionized administrator position for twenty-three years.

20.     Dr. Balchan is well respected by her peers within the District, throughout New York State, and has received national recognition for her exemplary work.  In June 2020, Dr. Balchan was elected to the position of District-wide Vice President of the City School District of New Rochelle Administrator and Supervisory Association (union).  She was also selected by the Board of Regents, Chancellor Betty Rosa, and NYSED Interim Commissioner of Education, Shannon Tahoe, to serve on the New York State Education Department's Reopening Schools Regional Task Force in June 2020, to contribute to state-issued guidance on COVID-19 for school districts.  On May 6, 2021, Dr. Balchan received the 2020 American Academy of Pediatrics District II Chapter 3 Special Achievement Award to recognize her outstanding work in response to COVID-19 and school reopening throughout the region.

1) **FIRST      AMENDMENT      PROTECTED      SPEECH:      WHISTLEBLOWER RETALIATION DURING COVID-19 PANDEMIC**

21.     The COVID-19 pandemic hit the City of New Rochelle hard in early March 2020, as the first epicenter of community spread in New York.  Dr. Balchan recognized her role to interpret the ever-changing medical information and advised District leadership on health and safety matters through the uncertain times that lay ahead.  Unfortunately, leadership played politics over public safety and this District leadership began silencing and impeding Dr. Balchan's efforts to keep the school community informed, prepared, and safe.  Dr. Balchan blew the whistle multiple times internally to her superiors and externally to governmental authorities to intervene on behalf of the students and staff based on public safety concerns.

22.     After she started raising questions about Superintendent Feijoo's failure to heed public health advice, Dr. Balchan became marginalized by the District's leadership and legal team.  Amidst a global health pandemic, the District's Medical Director, Dr. Balchan experienced retaliation by being

excluded from meetings; assigned new roles without discussion or additional compensation; given last minute directives; had her medical judgment dismissed or ignored; experienced humiliation in front of others and intimidation by District legal counsel, with threats of insubordination; and her medical leave request was mismanaged.  All together these events created a generally hostile and extremely stressful working environment.

23.     Dr. Balchan persevered and positioned the District for a safe reopening, including but not limited to all COVID-19 related protocols, disease surveillance, contact tracking and reporting, staff training, and on-site COVID-19 testing.  Dr. Balchan's work-related stress increased, triggering a documented medical condition, and she heeded the advice of her own medical team to take a temporary medical leave in late December 2020.  When Dr. Balchan exercised her rights under FMLA for protected leave time, the District interfered by failing to provide notification of her rights under FMLA, failing to provide written notification of whether her request for leave qualified under FMLA, and failing to reinstate Dr. Balchan to her position once cleared by her own physician and a physician designated by the District.

**Dr. Balchan recommended school closure in the New Rochelle epicenter, but was silenced**

24.     On Friday, March 6, 2020, Dr. Balchan tried to meet with Superintendent Feijoo, after the District's P.R.E.P. (COVID-19 response) Plan was distributed by email to the school community. Dr. Balchan recommended updating the P.R.E.P Plan for the following week due to receiving information that the local health department was overwhelmed with the 'Patient Zero' COVID-19 outbreak in the City of New Rochelle.  Superintendent Feijoo refused to meet with Dr. Balchan to discuss changing the plan and insisted that the District would follow the P.R.E.P. Plan as created the day prior.

25.     Dr. Balchan was extremely concerned about her City's health and safety due to the danger of COVID-19 and she was certain that the P.R.E.P. Plan would need to be revised as

information changed, including the need for school closure to mitigate widespread community transmission.  Unable to sleep, Dr. Balchan sent an email at 3:16 am on March 7, 2020, to Superintendent Feijoo and her cabinet members, urging them to make a plan to close schools because the COVID-19 situation in New Rochelle was "evolving rapidly."  Later in the day on March 7, 2020, Governor Cuomo declared a state of emergency due to rising cases of coronavirus in New York City and Westchester.

26.     On Sunday morning, March 8, 2020, Superintendent Feijoo emailed Dr. Balchan, her cabinet, and District counsel, Gus Mountanos, stating "I know it goes without saying and all of you know this but no one is to discuss Dr. Balchan's recommendation about closing schools with anyone." Later in the day on March 8, 2020, Superintendent Feijoo called Dr. Balchan on her personal cell phone in a very threatening manner.  While on the phone, Superintendent Feijoo demanded that Dr. Balchan read the email out loud that she had just sent to Dr. Balchan.  This encounter was witnessed by Dr. Balchan's husband, Mr. Romel Balchan.  Superintendent Feijoo then questioned Dr. Balchan about whether she had shared her suggestion about closing schools with anyone in the community.  Dr. Balchan responded by explaining to Superintendent Feijoo that she had spoken to many people that weekend, as a community member, because she believed schools should close while waiting for further directives from the state.  Of those individuals, Dr. Balchan communicated with a few physician colleagues and her City Councilwoman, Yadira Ramos-Herbert.  Despite Dr. Balchan explaining that she had spoken to community members about her concerns, Superintendent Feijoo sent a contradictory follow-up email later that same day, after the conversation with Dr. Balchan, stating, "I am confirming that you told me that you did not discuss your recommendation to close schools with anyone in the community."

27.     The next day, on Monday, March 9, 2020, Superintendent Feijoo sent an email at 11:13 am, directing Dr. Balchan "to refrain from responding to any inquiries from any staff members and/or members of the community, including parents regarding any and all coronavirus issues."  Dr.

Balchan replied at 11:35 am, stating, "As this is a health crisis, I request being briefed prior to the distribution of district-wide communications to our community." Yet, Superintendent Feijoo and BOE President, Amy Mosehli, held a press conference stating in a *Lohud* article published online at 12:37 pm, they were not in favor of closing schools and declared, "It's clean in school. We are sure that they're safe and taken care of." In truth, New York State Department of Health (NYSDOH) Commissioner, Dr. Howard Zucker, and the Centers for Disease Control were recommending prolonged closure of New Rochelle's schools because no one could be sure that it was safe.

28.     At approximately 5 pm on March 9, 2020, Dr. Balchan approached and met in person with Peter Scordo and Ana Reluzco from Human Resources. Dr. Balchan informed them that Superintendent Feijoo had not spoken to her at all that day and as a result she was feeling terrified that her medical license was being compromised due to the false information being communicated by the District, in the media and through email, about the safety of students and staff. Dr. Balchan told them that she felt that Superintendent Feijoo was endangering the school community by silencing her. Mr. Scordo advised Dr. Balchan that he would address her concerns with Superintendent Feijoo.

29.     Dr. Balchan felt her concerns could not wait until the morning and sent an email to Superintendent Feijoo at 7:58 pm on Monday, March 9, 2020. Dr. Balchan wrote that her "job and responsibilities clearly obligate me [Dr. Balchan] to respond to the inquiries regarding the health and well being of our staff and students." At 10:32 pm, Superintendent Feijoo invited Dr. Balchan via email to attend an in-person Superintendent's Cabinet meeting the following morning.

30.     On Tuesday morning, March 10, 2020, at approximately 9:30 am, Dr. Balchan provided a briefing, from a public health perspective, due to the rising numbers of coronavirus cases in New Rochelle. Dr. Balchan informed Superintendent Feijoo and her cabinet that, as Superintendent, Dr. Feijoo had the authority to intervene before the situation worsened and people died. Dr. Balchan explained that the schools were not equipped to protect students and staff. Dr. Balchan stated,

"Representing 11,000 students here, I feel a moral and ethical obligation to be a spokesperson for our community."

31.     Just before noon on March 10, 2020, Governor Cuomo declared a 1-mile containment zone in New Rochelle requiring the closure of only 3 out of the 10 schools in the District, effective Wednesday, March 11, 2020.  From information and belief, Superintendent Feijoo spoke to Governor Cuomo's office after the cabinet meeting and did not relay any of Dr. Balchan's concerns. Superintendent Feijoo then emailed the school community about the limited closure stating, "We thank the Governor's office for their partnership. After speaking with his staff, it is clear to us that they understand the complexity of our district and our advocacy to stay open. We trust that continued dialogue with the Governor's office will help position New Rochelle and our 11,000 students well." Between March 10 and March 11, 2020, Dr. Balchan sent numerous emails to Superintendent Feijoo, her cabinet members, and Gus Mountanos, District counsel, urging them to close schools throughout the District.

32.     On March 11, 2020, Dr. Balchan tried to get her message across to the Governor and her community using other channels.  At 1:30 am, on March 11, 2020, Dr. Balchan called the NYSDOH Provider number and selected the option to report a risk to public health and safety.  She spoke to an agent from Homeland Security who connected her to the state epidemiologist on-call, pleading for help to close schools in New Rochelle.  Before reporting to work on March 11, 2020, Dr. Balchan also posted a public comment on a Facebook group, Moms of New Rochelle, stating, "As a mom, a physician, neighbor and friend - I have kept my kids home all week.  #NewRoStrong."

33.     Dr. Balchan attended another in person meeting with Superintendent Feijoo's cabinet on March 11, 2020, at which they reviewed all of the students and staff with known COVID-19 symptoms from each building that remained open.  A diagnosis of lab-confirmed COVID-19 was rare at that time.  Dr. Balchan emphasized that people were unable to get tested because "the capacity is not there" and that "everybody in New Rochelle is running rampant and everybody is cross-

contaminating everybody throughout the whole District."  Despite learning about the presence of symptomatic individuals throughout New Rochelle, including students and staff from each building who were unable to get tested for COVID-19, Superintendent Feijoo nonetheless kept the remaining seven schools open.  Superintendent Feijoo then proceeded to visit the homes of 45 students, hand-delivering chromebooks with Ms. Mosehli (then BOE president) and Dr. Marrero (then Assistant Superintendent of Curriculum and Instruction), in an attempt to look good in an article written in the *New York Times*.

34.     After work on March 11, 2020, Dr. Balchan communicated with members of the teachers' union and the administrators' association at an in-person impromptu meeting in her office about potentially speaking to the press about the unsafe conditions in the District's schools, such as lack of alcohol-based hand sanitizer.  Instead of speaking to the press, the District union leadership connected Dr. Balchan with New York State United Teachers (NYSUT) leadership in Albany, in an effort to relay their joint health and safety concerns to Governor Cuomo's office.

35.     On the morning of March 12, 2020, Dr. Balchan called Mr. Joseph Glazer, a Deputy Commissioner from the Westchester County Department of Health (WCDH), about the concerning number of symptomatic individuals throughout the District unable to get tested, and the difficulty she faced keeping track of them all.  The call was made with Superintendent Feijoo, on her cell phone, with Assistant Superintendent Bongo, and Ms. Reluzco (Director of Human Resources) present.  Dr. Balchan followed up the call with an email to Mr. Glazer with a list of twenty-four people being tracked for COVID-like symptoms or exposure.  Eighteen symptomatic individuals were at schools that Superintendent Feijoo allowed to remain open.

36.     Later in the day, on March 12, 2020, at approximately 1:30 pm, Dr. Balchan received a joint call from three attorneys from Governor Cuomo's Office (Judy Mogul, Licha Myiendo, and Richard Zahnleuter), regarding concerns about "the accuracy of information being conveyed to the state" by Superintendent Feijoo.   Dr. Balchan shared that her voice had been silenced by

Superintendent Feijoo and that it was her medical opinion that the spread of COVID-19 in New Rochelle was likely much worse than reported, due to the limited availability of testing and increasing numbers of symptomatic individuals from all school buildings.  The state attorneys indicated that they would report Dr. Balchan's account of the situation in New Rochelle directly to Governor Cuomo and Dr. Zucker.  Within two hours of this conversation, Superintendent Feijoo drafted and sent an email to the school community sharing that it was her decision to close the entire District for two weeks.  The District's closures preceded Governor Cuomo's March 16, 2020, Executive Order which mandated the closure of all schools statewide commencing March 18, 2020.  Dr. Balchan was thereafter excluded from all meetings with Superintendent Feijoo and her Cabinet to discuss any of the District's COVID-19 responses for several months, until on or about June 1, 2020.

37.     COVID-19 takes two to fourteen days from last exposure for an exposed individual to develop symptoms.  By March 27, 2020, two weeks following the closure of all schools in the District, Dr. Balchan and her team of school tracking nurses reported a total of 106 symptomatic staff, including 6 who had tested positive for COVID-19.  By May 1, 2020, when cases were slowing throughout the region, Dr. Balchan's team tallied a total of 231 staff members who had been tracked for COVID-related reasons, with 32 testing positive, and 2 staff members who died.  Through outreach to families in the District, the school nurses recorded approximately 100 cases of COVID-19 directly impacting students, including the hospitalization or death of a family member.  Dr. Balchan believes that this number does not accurately reflect the true loss for the New Rochelle school community because in June, at the end of the 2019-2020 school year, over 3,000 people in New Rochelle had contracted COVID-19.  Had Superintendent Feijoo and the District leadership team heeded Dr. Balchan's recommendation to close schools one week earlier, the number of cases and deaths may have been significantly lower.

**Failure by Superintendent Feijoo to notify all contacts potentially exposed to COVID-19 when in contact with her after she tested positive for COVID-19**

38.     On Saturday, March 21, 2020, Superintendent Feijoo publicly announced that she tested positive for COVID-19.  Superintendent Feijoo did not follow District protocol when she became symptomatic or upon receipt of her positive test result.  Superintendent Feijoo reported publicly that she developed symptoms on March 12, 2020, the day she visited several schools and stayed late at City Hall.  Dr. Balchan was not informed that Superintendent Feijoo became ill that day, or that she went for COVID-19 testing, and Superintendent Feijoo did not report her results directly to Dr. Balchan or the nursing staff before making a public statement about her illness on March 21, 2020.  Furthermore, Dr. Balchan and her nursing staff were completely left out of the contact tracing process to determine who needed to quarantine following their exposure to Superintendent Feijoo during her illness. The list of known contacts that Superintendent Feijoo eventually provided to Dr. Balchan was not all inclusive.  Specifically, Dr. Balchan's name was not on the list, despite being in a meeting with Superintendent Feijoo in her office on the morning of March 12, 2020.  Two staffers at City Hall, a secretary and an administrator, both notified Dr. Balchan that they became symptomatic for COVID-19 after exposure to Superintendent Feijoo on March 12, 2020; however, neither were identified or in receipt of a quarantine notice from Superintendent Feijoo.

39.     On Sunday, March 22, 2020, Deputy Commissioner Glazer called Dr. Balchan from the Westchester County Department of Health (WCDH) with information about Superintendent Feijoo's illness.  The HIPPA (Health Insurance Portability and Privacy Act) Privacy Rule permits covered entities to disclose protected health information without authorization for specified public health purposes.  As such, Mr. Glazer reported that Dr. Harold Coles, Superintendent of Southern Westchester BOCES, observed Superintendent Feijoo to be symptomatic at a press conference on Tuesday, March 10, 2020.  Dr. Balchan immediately informed Superintendent Feijoo via email, so she could address the discrepancy and notify potential contacts from those two days, including the students from the home delivery chromebook distribution on March 11, 2020.  Superintendent Feijoo's response

12

to Mr. Glazer was, "Your desire to determine when I became symptomatic is recognized and rejected. It is absurd for you to feel like you can determine when **I felt symptoms.** How can a medical professional believe the interpretation of a third party over that of the patient themselves? This email and its contents are unacceptable and inappropriate. I became symptomatic on March 12. This is not a convenient date for me, it is the accurate date...**I have NO intention of changing my date of symptoms as it speaks to my character and integrity in a City of 80,000**. Dr. Balchan has no authority to speak to you about my medical conditions on my behalf, and you have no authority to assume you know when my symptoms started. Please let me know if the information I was provided by Dr. Balchan is inaccurate in any way to mischaracterize your involvement in this mess. Furthermore, please confirm that you recognize my symptoms started on March 12, 2020 and that this entire system is based on integrity and self-reporting.   Please note that I have copied District counsel and the BOE President.**"**

40.     Dr. Balchan was alarmed by Superintendent Feijoo's response and first reported her concerns as a formal complaint to both Mr. Scordo and Ms. Reluzco of Human Resources in an email as follows: "Since the outset of the COVID-19 crisis, she [Superintendent Feijoo] has been deceiving the public and disregarding my best medical judgments and recommendations on how to protect our school community. With today's report that she clearly had visible symptoms two days prior to the date she publicly announced, her credibility continues to be questionable.  Dr. Feijoo continues to provide our staff, her colleagues, students and families with misinformation that is potentially harmful to their health.  It is my duty to report this to you."

41.     The next day, on March 23, 2020, Dr. Balchan reported Superintendent Feijoo's failure to notify families of their potential exposure to COVID-19 first to the Board of Education members and District counsel, and then as suspected negligence to the local New Rochelle Police Department (NRPD). School officials are obligated to notify their local police department of any cases of possible child abuse in an educational setting, in this specific case "intentionally or recklessly

engaging in conduct which creates a substantial risk of such physical injury, serious physical injury or death." Lieutenant Wentzler took the verbal report from Dr. Balchan regarding Superintendent Feijoo's refusal to send notices to the families of those students which she hand-delivered chromebooks to the day after she was noted to be symptomatic with COVID-19. Dr. Balchan received a return call from the NRPD informing her that they would not investigate the circumstances any further.

42.     Medical research at the time encouraged, and current CDC and NYSDOH guidance now requires, notification of all contacts who were exposed to COVID-19 positive individuals, including the two days prior to symptom onset. Mr. Scordo sent Dr. Balchan an email on March 23, 2020 indicating that he investigated the situation with Superintendent Feijoo regarding notification of additional contacts. He wrote that Dr. Feijoo was actively pursuing an answer from the health department and that no disclosure was required unless they received further guidance. Erring on the side of caution, out of concern for the health of the District's students and families, Dr. Balchan directed her nursing staff to contact the families of those potentially exposed. The nursing staff included the 45 students in their daily outreach wellness checks to students from their respective schools. Dr. Balchan was informed that two of the identified students reported symptoms and the nursing staff provided next-step guidance to those families.

### District disregarded Dr. Balchan's recommendation to provide guidance to "Essential workers" on clearance to return to work

43.     On April 10, 2020, Dr. Balchan addressed an email to Mr. Scordo and Ms. Reluzco of Human Resources, asking them to share the COVID-19 Return to Work Protocol with staff since Dr. Balchan was unable to distribute it without approval. She felt it was important to familiarize staff with the new COVID-related processes regarding health and safety, especially since new staff were expected to report on-site the following week for the expanded chromebook distribution. However, the District disregarded Dr. Balchan's request and withheld the protocol from staff, creating potentially unsafe working conditions, since staff, including administrators, were not familiar with the daily

symptom screening, temperature checks, isolation/quarantine timeframes, and how to gain clearance to return to work after being excluded for illness or exposure.

### New assignments, misrepresentation, lack of communication, disrespect

44.     On May 15, 2020, Superintendent Feijoo published misinformation about Dr. Balchan in a Districtwide guide, implying that Dr. Balchan was a member of the Superintendent's cabinet when announcing the Reopening Committee chairs.  This could not be further from the truth, as Dr. Balchan not only was *not* a member of the cabinet, but she had not participated in a cabinet meeting in two months, since March 11, 2020, before schools closed.  It also concerned Dr. Balchan that the community was informed of her assignment through a District-wide email, the same method used to notify her.   Dr. Balchan, whose medical recommendations were regularly disregarded by Superintendent Feijoo, was now announced as the chair of the District's Health Committee on reopening.  Dr. Balchan was concerned that Superintendent Feijoo was painting a picture of intentional collaboration when it did not exist, particularly since Dr. Balchan did not have an equal voice to the four other committee chairs who each sat on the Superintendent's cabinet.  Dr. Balchan was afraid that this new title would give the District leverage to pass blame onto her in the event of any failure to the District-wide plan.  Irrespective of this, Dr. Balchan accepted the chair position and continued to give her community her best efforts despite the challenges she faced with District leadership.

45.     On May 18, 2020, Assistant Superintendent Marrero, during a virtual meeting with Dr. Balchan and Dr. Bongo, told Dr. Balchan that, as the chairperson of the health reopening committee, she could select her own committee members.  On May 21, 2020, Superintendent Feijoo and Assistant Superintendent Marrero assigned several individuals to Dr. Balchan's committee without speaking with her.  Dr. Balchan documented her concerns in an email that day to Dr. Marrero and copied BOE members.  In an email response, Ms. Mosehli, then BOE President, chastised Dr. Balchan for not following the chain of command.  Dr. Balchan via email responded to Ms. Mosehli that she

already had gone through her appropriate chain of command with her concerns, to which Ms. Mosehli provided no further response.

46.     Superintendent Feijoo continued to exclude Dr. Balchan from conversations with the Cabinet after forming the reopening committees.  For example, on June 1, 2020, Dr. Balchan had to wait over one hour before being admitted to a virtual cabinet meeting.  Once admitted, the discussion was very brief and cut short.  A follow-up meeting was planned for June 8, 2020, and on that day, Dr. Balchan waited at the scheduled time and never received an invitation to the virtual Cabinet meeting to discuss reopening planning with the other chairs and Superintendent Feijoo.

47.     On June 18, 2020, Dr. Balchan shared with the District Public Relations Officer, Ken Valenti, that she was appointed to the New York State Education Department's Reopening Schools Regional Task Force, noting that it should be shared in a District-wide newsletter, as is customary for recognizing the achievements of students and staff.  Mr. Valenti said he would run it by the Superintendent, but Superintendent Feijoo did not offer congratulations or authorize the public announcement.  Similarly, when Dr. Balchan's mother died on June 27, 2020, Superintendent Feijoo did not contact Dr. Balchan to offer any condolences.

48.     Every summer since 2017, when Dr. Balchan was hired as a 10-month employee, she would request Board approval to work 20-25 extra days at her own discretion during the summer months of July and August.  Dr. Balchan anticipated a tremendous amount of work due to COVID-19 reopening planning in the summer of 2020 and requested 40 total days.  In actuality, Dr. Balchan's workload was unrelenting and she worked continuously throughout the summer, the equivalent of 46.78 days, without any respite before the start of the new school year in September 2020.  Dr. Balchan faced additional challenges extending through the summer, such as last minute meeting invitations or omissions, and conflicting directives from District leadership.  These nuances, however subtle, effectively minimized Dr. Balchan's importance and contribution to the planning stages for reopening schools.

49.     The first meeting Superintendent Feijoo scheduled to mesh the work of each reopening committee was on Monday, July 6, 2020.  Dr. Balchan received notice of this meeting on Friday, July 3rd, a Federal holiday.

50.     On July 13, 2020, the New Rochelle Federation of United School Employees (FUSE) Union leadership requested Dr. Balchan's presence at a meeting with the Superintendent's cabinet to discuss reopening planning.  Dr. Balchan was not scheduled on the virtual meeting link and was admitted to the meeting well after it started.  Dr. Balchan supported the concerns of FUSE and was asked by the FUSE leadership to participate in the follow-up meeting set for July 15, 2020.

51.     On July 15, 2020, Dr. Balchan was left off of the virtual FUSE meeting invite.  At the time of the meeting, Dr. Balchan requested the link be sent to her email so she could join. Dr. Balchan received the invite, but was kept in the virtual waiting room for most of the meeting.

52.     On July 21, 2020, the day before a BOE meeting, Dr. Balchan was notified by Superintendent Feijoo that her attendance was requested and that she would be expected to present her part of the reopening plan to the BOE.  At no point prior to this date had Superintendent Feijoo or Assistant Superintendent of Curriculum and Instruction Marrero made any effort to review and compare the reopening committee work with the recently released NYSDOH (July 13, 2020) and NYSED (July 17, 2020) guidance documents.  Dr. Balchan received a copy of the presentation that was prepared by Superintendent Feijoo and Assistant Superintendent of Curriculum and Instruction Marrero.  Dr. Balchan noted that her name was listed last, after the four other chairs, and her committee work was inadequately represented on a single slide.  When Dr. Balchan asked to add graphics to the slide, she was discouraged by Superintendent Feijoo.  Yet, during a dry run of the presentation on the morning of July 22, 2020, Dr. Balchan observed that her supervisor, Dr. Bongo, had been permitted to add additional slides and visual graphics.  Dr. Balchan subsequently enhanced her portion of the presentation before the BOE meeting that night, scrambling throughout the day to concisely provide a

recap of her last four months battling the pandemic in addition to adequately representing her committee's work on reopening schools.

53.     On July 22, 2020, nine days before the final reopening plan was due to be published on the District's website, and without any prior involvement in the reopening committee work, Ms. Reluzco (Executive Administrator for Human Resources) began meddling with Dr. Balchan's committee work by reassigning her and other administrators to newly formed committees.

54.     On Monday, July 27, 2020, Ms. Reluzco, having texted Dr. Balchan throughout the weekend, continued to text Dr. Balchan to meet with her about the reopening plan.  However, Ms. Reluzco's lack of familiarity with the subject matter hindered Dr. Balchan's progress.  Aside from changing the format multiple times, Ms. Reluzco shortened Dr. Balchan's deadline and then insisted that Dr. Balchan be named the District's "COVID Compliance Officer" [COVID-19 Safety Coordinator].  Dr. Balchan was concerned that she would be scapegoated for any failure of the plan and raised her concerns about Ms. Reluzco's meddling and last-minute changes to the reopening plans via email and phone to Dr. Bongo and Superintendent Feijoo late that afternoon.

55.     The following day, July 28, 2020, Dr. Balchan virtually met with her committee after submitting her draft work to Superintendent Feijoo.  Ms. Reluzco then asked to join the virtual meeting and proceeded to insult the committee's work and order Dr. Balchan around.  Ms. Reluzco then crafted Superintendent Feijoo's response to Dr. Balchan's inquiry about following her directives, stating, "Ana is working on my behalf."  Ms. Reluzco then took the committee's work, removed the detailed protocols, and published an insufficient version on the website without Dr. Balchan's final review, including the misspelling of Dr. Balchan's name.

56.     On August 5, 2020, Ms. Reluzco interjected herself into another virtual meeting with Dr. Balchan and her staff tracking nurses.  All those in attendance, other than Ms. Reluzco, were familiar with the topics of discussion.  In attendance from the District Human Resources office were Ms. Traci Jackson (Executive Director of Human Resources), Mr. Ali, and Mr. Reed.  Dr. Balchan felt

attacked again by Ms. Reluzco, who disputed every referenced fact provided by Dr. Balchan in regards to COVID-19 protocols.  At some point during the meeting, Dr. Balchan texted the word, "help" to Mr. Reed (Assistant Superintendent of Human Resources) and asked if they could do the meeting without Ms. Reluzco because she was so disruptive.  Mr. Reed did not reply.  Dr. Balchan's staff expressed their concern to Dr. Balchan in a series of group texts, one of Dr. Balchan's staff nurses, Ms. Ramondelli, wrote, "We've been doing this all along,"  "She's making me angry.  Has she not been listening since March???"  Another staff nurse, Ms. DeGeorge, texted later, "It seems ridiculous to me. I don't even know why Ana is involved now and not since March."  Ms. Reluzco proceeded to take over the meeting and dismiss the nursing staff.  In the end, the group did not accomplish anything after two hours.

57.    Dr. Balchan tried to remedy the issue regarding her concerns and the concerns of others about Ms. Reluzco's interference through her former supervisor, Dr. Bongo.  On August 7, 2020, Dr. Bongo escalated the matter through his chain of command to Superintendent Feijoo, Mr. Reed, and Ms. Reluzco.  On the morning of August 7, 2020, Dr. Balchan was contacted by Dr. Bongo to attend a brief virtual meeting at 11:15 am with him and Mr. Reed.  Dr. Balchan invited a union representative, Dr. Nicolas Cracco. During the meeting, Mr. Reed failed to address Dr. Balchan's concerns about Ms. Reluzco, and instead laid out a plan to add more direct contact with Ms. Reluzco, daily, starting the following Monday. Mr. Reed promised a follow-up meeting later in the day to address the other issues, but nothing was scheduled. After the meeting on August 7, 2020, Dr. Bongo wrote an email to Superintendent Feijoo and Mr. Reed: "I want to acknowledge Dr. Balchan's comment to me on August 6th. She told me she was not comfortable meeting with Ana as it makes for a 'hostile work environment'. She did not make a formal complaint, but she stated she contacted [her union representative] Bob Saperstein about her concerns."  Dr. Balchan emailed Mr. Reed to schedule a follow up meeting to discuss her complaint about Ms. Reluzco, and when she did not receive a response, she spoke to Mr. Saperstein, and formalized her complaint in writing by sending Mr. Reed

an email, entitled "workplace bullying," at the end of the day on August 7, 2020. The attached letter, inadvertently dated August 8, 2020, detailed a series of concerns that occurred over the preceding five months, including specific incidents involving Ms. Ana Reluzco, that impacted Dr. Balchan's mental health. Dr. Balchan asserted that, "It is my position that this type of behavior is bullying, abusive and undermines my professional integrity. It disrupts my workflow and may delay the execution of critical tasks. Furthermore, this is causing me emotional pain, stress, anxiety, and frustration. I look to you to remedy these inequities so that I can perform my function to the highest of standards." Mr. Reed responded via email on August 10, 2020, informing Dr. Balchan that he forwarded her complaint to District counsel to conduct an investigation into the allegations.

58. On August 20 and 21, 2020, Dr. Balchan was asked to assist Mr. Reed, Ms. Reluzco and Ms. Dara Joseph (Director of Special Education) with planning for the use of personal protective equipment (PPE) for the Special Education staff. Dr. Balchan provided resources via email for all parties to review prior to the virtual meeting scheduled on August 21, 2020. Ms. Reluzco, intent on not reviewing the literature, replied in an email to all, directing Dr. Balchan to educate them all on the subject matter the following morning. Dr. Balchan expressed her hesitancy about attending another meeting with Ms. Reluzco to Dr. Bongo in an email because her complaint had not been addressed, and as a result she was experiencing a lot of anxiety and frustration. Dr. Bongo replied to the email and encouraged her to attend and to notify him if she still felt uncomfortable. Dr. Balchan, who had initially declined the meeting invitation, agreed to attend after Mr. Reed reassured her via text that everyone had reviewed the documents. Dr. Balchan texted Dr. Bongo after the meeting, describing it as "mildly antagonizing" and mentioning that her predecessor, Dr. Adrienne Weiss-Harrision, had a full time nurse practitioner working alongside her to help distribute the administrative workload for the health services department.

59. On August 22, 2020, in an email to Mr. Reed, Dr. Balchan wrote, "I still feel that Ana creates a confrontational and uncomfortable work environment." Dr. Balchan urged Mr. Reed to

provide her with a meeting date and time so the issue could be resolved and minimize the interference with her work during the pandemic. Mr. Reed did not send a reply. Instead, on August 24, 2020, Mr. Mountanos, District counsel, contacted Mr. Saperstein, Union Representative, to schedule a meeting with Dr. Balchan for September 2, 2020, to discuss her workplace bullying complaint that originated on August 7, 2020.

60.     Dr. Balchan's workload greatly increased during the week of August 24-28, 2020, and she was certain that the District was not prepared to reopen its schools. On the morning of August 26, 2020, with less than two weeks before the start of the school year, Superintendent Feijoo held the first principals' meeting with Dr. Balchan in attendance since the end of February. Dr. Balchan had received two calls that morning from Mr. Reed. The first was to invite her to give a presentation on reopening to the District principals at noon. A few minutes after scheduling that meeting, Mr. Reed called Dr. Balchan and directed her to meet with him and Superintendent Feijoo at 10:30 am to go line by line through the NYSDOH requirements for district-wide reopening protocols; the protocols that were omitted by Ms. Reluzco at the time of the District's reopening plan publication. Additionally, Mr. Reed required Dr. Balchan to review the staff accommodation requests, develop staff and student training and conduct medical reviews of staff for N95 respirator fit testing. Dr. Balchan emailed Dr. Bongo on Saturday, August 29, 2020, to document the last minute demands placed on her by Superintendent Feijoo and Mr. Reed.

### Vote of No-Confidence in Superintendent Feijoo's leadership

61.     On September 1, 2020, the Union Executive Board of the City School District of New Rochelle Administrator and Supervisory Association submitted a letter to the New Rochelle BOE expressing a unanimous vote by the members expressing their lack of confidence in Superintendent Feijoo's leadership or her ability to safely reopen schools for in-person instruction. The letter specifically states, "**A lack of clear direction, transparency, collaboration, and appropriate**

timelines have been major concerns by A&S members, since the first week of March 2020.  These concerns have continued, to date [September 1, 2020]."

62.     Superintendent Feijoo took a medical leave on September 3, 2020, initially for two weeks, then extended on September 18, 2020, until her resignation from her position on October 6, 2020.

**District Counsel intimidates Dr. Balchan from reporting her concerns about leadership**

63.     Dr. Balchan's harassment complaint referenced in paragraphs 57-59 above against Ms. Reluzco was finally investigated on September 2, 2020, during a virtual meeting with Mr. Mountanos, District counsel, and Mr. Saperstein, Dr. Balchan's Union Representative.  Mr. Mountanos exacerbated her symptoms, causing further trauma.  In an email to Mr. Saperstein that evening, Dr. Balchan wrote, "Today's meeting was very uncomfortable, and although I brought concerns about bullying to the district's attention, I felt that Gus was trying to discredit my statements and move me to retract things from my letter.  His style of questioning put me on the defensive. I feel that his attitude is very aggressive and I shouldn't be further interviewed by him. I request that they appoint another attorney to complete this investigation." Mr. Saperstein responded to Dr. Balchan as follows, "Gus's style is generally aggressive...My advice is not to make the request [for another attorney], because it would be counter-productive to your interests, is unlikely to be granted, and if granted, another attorney from the firm who works under Gus would be appointed."  Of note, Dr. Balchan is not the only administrator who has been traumatized by Mr. Mountanos during his internal investigations. Ms. Kimmerly Nieves, co-President of Dr. Balchan's union, noted in an email communication to Dr. Balchan on September 3, 2020, that, "I had multiple horrible meetings with Gus, and I do not think we can do much...My experience with Gus was traumatic."

64.     The District immediately began retaliating against Dr. Balchan in other ways for filing her complaint against District leadership.  First, the District interfered with Dr. Balchan's time off.

Specifically, Dr. Balchan emailed Mr. Reed (Assistant Superintendent of HR) and Dr. Bongo (her supervisor) on Wednesday, September 2, 2020, to wrap up her work and notify them that she would be taking Thursday and Friday off.  Neither told her it would be a problem.  The following day, September 3, 2020, Mr. Scordo called Dr. Balchan while she was on her scheduled day off to *falsely* claim that 10-month employees (like Dr. Balchan) are not eligible for vacation days. In fact, all 10-month administrators received compensatory vacation days due to COVID-19 from the spring of 2020. Second, Mr. Scordo insisted during the phone call that Dr. Balchan should review her own medical records and those of her staff to provide clearance for respirator fit testing.  Mr. Scordo asked Dr. Balchan to put her position in writing and she sent an email to him that day, and as a result, Dr. Balchan canceled her day off.  In Dr. Balchan's email response to Mr. Scordo on September 3, 2020, she explained that it would be unethical to review her own medical history and those of staff she directly supervises.   According to OSHA's medical questionnaire for respirator fit test clearance, the instructions read: "To maintain your confidentiality, your employer or supervisor must not look at or review your answers, and your employer must tell you how to deliver or send this questionnaire to the health care professional who will review it."  About four hours later, Dr. Balchan was notified via email by her Union Representative, Mr. Saperstein, that the District was considering her to be insubordinate by refusing to do the medical review.

65.     On the evening of September 3, 2020, Dr. Balchan sent an email to Dr. Bongo informing him that she changed her personal (COVID-19 vacation) day on Friday, September 4, 2020, "into a sick day for [her] mental health." Dr. Balchan also sent text messages that evening to Dr. Bongo, "Just want to know why they are picking on me...Gus called Bob and said the district said I was being insubordinate. And questioning my days off...The day after talking to Gus...seems like they are trying to get back at me for speaking up."

66.     The District's Human Resources department collected over 100 workplace accommodation requests before the start of the 2020-2021 school year.  The District decided against

hiring an independent medical reviewer, which would have lessened Dr. Balchan's workload.  Mr. Reed directed Dr. Balchan to review more than half of the submissions during the month of September 2020.  Upon information and belief, Mr. Reed involved the District's legal team in making the final decision on whether to grant the accommodation requests for staff, did not notify staff about the status of their requests in a timely manner, or consistently distribute determination letters to all staff members who made requests.

**District not ready to reopen**

67.     In addition to delays in accommodating staff for the return to in-person schooling, the District planned to have staff back in their buildings on September 23, 2020, without adequately training them on COVID-19 related protocols as required by New York State Education Department and New York State Department of Health.   Concerned for staff and student health and safety, Dr. Balchan spent the weekend of September 19-20, 2020, creating a narrated training video for staff based on a presentation she gave principals on August 26, 2020.

68.     Mr. Scordo, in his new role as Deputy Superintendent, accelerated the schedule for in-person learning, starting with small populations of Special Education students during the week of September 21, 2020.  The first students to return to in-person learning within the District were at Columbus Elementary School on Wednesday, September 24, 2020.  Dr. Balchan was concerned that the District had not yet created an executable plan to meet the state requirement for the periodic screening of students for COVID-19 with a health questionnaire.  On Friday, September 18, 2020, Dr. Balchan learned during a conversation with Mr. Reed that the electronic health screening platform used for staff, Day Automation, was not secure enough to expand to the student population.  Mr. Scordo also spoke to Dr. Balchan that day because he wanted to transfer "administrative control" to her and remove it from Mr. Reed's office.  In an email to Dr. Bongo on September 20, 2020, Dr. Balchan asked for help to get the project off the ground.  A temporary solution was crafted by Dr. Balchan using a paper version of the survey, consistent with a flowchart she had distributed on or about September 10,

2020.  Dr. Balchan's materials aligned with CDC and NYSDOH guidelines and were vetted by the Westchester County Department of Health and her local chapter of the American Academy of Pediatrics.  Ms. Reluzco, who lacks a medical background, challenged the list of symptoms for student screening and sent an email to Mr. Scordo on September 20, 2020, to request that Mr. Scordo and Dr. Balchan "contact the DOH for specific guidelines for excluding students from school."

69.     On September 29, 2020, Dr. Balchan sent an email to Mr. Reed urgently requesting the acquisition of an electronic version of the student screening questionnaire.  Dr. Balchan made a recommendation for a platform that would not only streamline the review of students' health screenings, but also would aid in the tracking of COVID-19 illnesses and quarantines more efficiently. Mr. Scordo informed Dr. Balchan via email on September 30, 2020, that Dr. Marrero chose a different platform. Not only was Dr. Balchan not consulted on the choice of the platform, but the program was not going to be accessible until October 13, 2020, less than a week before more students were expected to return to in-person learning.  Dr. Balchan spent a significant amount of time on the build-out, including the weekend.  There was a test email sent to the school community on Friday, October 16, 2020, two days prior to the official launch.  There was no time to train the nursing staff in advance, so on Saturday October 17, 2020, Dr. Balchan created a quick reference guide to use when students arrived on Monday, October 19, 2020.  This was accomplished with limited tech support and no additional compensation.

**Increasing workload with limited supports**

70.     As Dr. Balchan's workload continued to grow, she was not provided adequate support, and projects continued to be assigned to her by District leadership at the last minute.  In particular, the HR department relied on Dr. Balchan and her team tremendously throughout the pandemic.  Dr. Balchan greatly appreciated some relief of duties when the time management for her department, nearly thirty staff members, had been taken over by HR staff while the buildings were closed.  In September 2020, amidst all of Dr. Balchan's projects related to reopening schools, HR wanted her to resume the

Timepiece time management data entry for her staff.  In a series of texts to Dr. Bongo on September 22 and 23, 2020, Dr. Balchan wrote about needing protection from the harassment she was experiencing from the HR department.  Dr. Balchan had requested help to meet the needs of the District, suggesting additional staff, such as an assistant director or a nursing supervisor.

71.     Throughout October and November 2020, Dr. Balchan continued to receive directives from Human Resources staff to complete the time management system despite her request for assistance.  Dr. Bongo initially stepped in, but after his retirement on October 31, 2020, Mr. Reed assigned it back to Dr. Balchan in an email on November 6, 2020.  Dr. Balchan expressed in her reply email, "I have been working nights, weekends and holidays to accomplish all of the covid-related and health services related [work], which is why I asked for timepiece to be taken off my plate."  It became apparent to Dr. Balchan that she no longer had a supervisor to act as a buffer between her and District leadership with Dr. Bongo's departure.  Dr. Balchan requested by email that she and Mr. Reed begin discussing priorities for her work, including after hours expectations. Mr. Reed provided no response. Dr. Balchan was concerned that the District's leadership would now begin targeting her even more since Dr. Bongo was gone and he had been her only advocate in the District's top leadership.

72.     On November 12, 2020, Ms. Natalie Ali, Dr. Balchan's principal clerk, received a call from Ms. Nancy Lippolis, a clerk in HR's Civil Service office, with a new request for Dr. Balchan to approve in Timepiece.  Dr. Balchan explained in an email to Ms. Ali, Mr. Reed and Mr. Scordo, "I currently do not have the ability to do timepiece [as the application was not loaded on her remote laptop].  I've apprised Mr. Reed of this situation and have requested it to continue as it has since March."  Mr. Scordo questioned Dr. Balchan's request in a series of emails between November 16-17, 2020.  Dr. Balchan explained her position via email and also during a phone call with Mr. Scordo on November 18, 2020.  The situation remained completely unresolved until Interim Superintendent Marrero's December 1, 2020, approval of all outstanding overtime for the nurses.

26

## Workplace interference after Dr. Bongo retires

73.     On November 18, 2020, Dr. Balchan attended a virtual emergency planning meeting with Interim Superintendent Marrero, his cabinet, public relations team, and BOE President Rachel Relkin and BOE Vice President William Iannuzzi. The meeting was called prior to the public announcement by Governor Cuomo that a section of New Rochelle was entering a COVID-19 precautionary yellow zone, necessitating certain testing requirements for the four schools in those areas to remain open for in-person learning. A collective decision was made during the meeting to close all ten schools in the District for a two week period. However, on November 19, 2020, Interim Superintendent Marrero changed the school closure plan and announced via robocall and email that certain Special Education programs would continue to operate in-person during the yellow-zone designation period.

74.     Throughout the day on Friday, November 20, 2020, Dr. Balchan was given mixed messages from Interim Superintendent Marrero about the role she and her staff were to play in the District's COVID-19 testing plan. To start, Interim Superintendent Marrero informed Dr. Balchan that she would be presenting on the testing program (still needing to be developed) at the BOE meeting on November 24, 2020. He also assured the nurses that they would *not* be expected to conduct the testing in schools. In a text message later that morning, Dr. Balchan inquired about Ms. Reluzco's role in the testing program and Interim Superintendent Marrero indicated he trusted Dr. Balchan to develop it and suggested that he would push to hire a nurse practitioner to help her department. By the end of the day, in a meeting with the Westchester County Department of Health, it was determined that due to the low number of students and staff expected in buildings (only small Special Education classrooms), the recommendation was made to refer students and staff to off-site locations to meet the state requirement for COVID-19 testing. Interim Superintendent Marrero and Ms. Reluzco were both in attendance, and they expressed their reluctance to bring COVID-19 testing on-site in the District and as a result no further discussion was planned with the WCDH.

75.     At approximately 6 pm on November 20, 2020, Dr. Balchan was contacted by Interim Superintendent Marrero on her personal cell phone.  He was calling to gain her support for a holiday pause following Thanksgiving.  Dr. Balchan expressed her confusion about his sudden change in plans for Special Education during the yellow zone designation.  Interim Superintendent Marrero told Dr. Balchan that he changed his decision about the Special Education students after Ms. Reluzco told him that "Dr. Balchan said [he] could proceed with Special Ed," allowing certain classes to attend during the yellow zone closure.  Dr. Balchan, in an effort to build a trusting working relationship with Interim Superintendent Marrero, explained that, "for the record I have previously filed a complaint about Ana with HR and I have never authorized her to speak on my behalf."  Dr. Balchan explained to Interim Superintendent Marrero that she had difficult interactions working with Ms. Reluzco and did not trust her but was trying to play nice in the sandbox.  Dr. Balchan expressed concern that Ms. Reluzco did not always fully understand and often misinterpreted COVID-related matters.  Interim Superintendent Marrero reassured Dr. Balchan that he would have to think about this in terms of his operating plan and promised to include Dr. Balchan in all upcoming cabinet meetings.

76.     It was around this time that Dr. Balchan's physical health started concerning her.  She developed a persistent hordeolum (stye) on her eye and right-sided arm, shoulder, and neck pain attributed to stress and excessive hours working at the computer from home.  The shoulder and neck pain was impacting her ability to sleep, and at times the pain was so severe that she could not play with her children.  Dr. Balchan managed the pain conservatively at home with hot and cold compresses, non-steroidal anti-inflammatory medications, stretching and yoga.  Once vaccinated for COVID-19, Dr. Balchan began receiving massage therapy for this chronic condition beginning on March 10, 2021.  Dr. Balchan also learned from her dentist on April 16, 2021, that due to trauma from clenching her teeth from chronic stress, she has lost bone in her lower jaw.

**Accelerated timeline for on-site testing without planning and support in place**

77.     On Monday, November 30, 2020, Dr. Balchan was notified by Interim Superintendent Marrero that she was expected to give a COVID-related presentation at the virtual BOE meeting the following night.  During the livestreamed BOE meeting on December 1, 2020, Interim Superintendent Marrero changed the rehearsed plan, canceling the holiday pause schedule and returning students to buildings on December 10, 2020.  These changes necessitated the creation of an on-site COVID-19 testing program.  Without a plan in place, Interim Superintendent Marrero acknowledged the task would be "Herculean" and "insurmountable."  During the discussion portion of the BOE meeting, Dr. Balchan received several insults from Board member, Ms. Mosehli, when providing her medical assessment regarding COVID-19.  For example, Ms. Mosehli was notably shaking her head at Dr. Balchan, stating there was a "conflation of issues," and she did not support Dr. Balchan's statement that mitigation is to prevent a spike.  Ms. Mosehli further insulted Dr. Balchan by stating she had "completely the wrong type of attitude."  Dr. Balchan felt disrespected by Ms. Mosehli and sent an email to her union representatives later in the week, who reviewed the recorded meeting and agreed the comments were disparaging.

78.     Without any further discussion or direction from Interim Superintendent Marrero to support the creation of the District's on-site COVID-19 testing program, Dr. Balchan called Mr. Reed, the designated COVID-19 Safety Coordinator on December 2, 2020.  Mr. Reed scheduled a virtual meeting on December 3, 2020, at 12 pm, titled "Covid Testing Game Plan."  During the meeting, Dr. Balchan expressed to Mr. Reed and Interim Superintendent Marrero the amount of work she anticipated to create an on-site testing program.  Interim Superintendent Marrero, in a condescending manner, stated other Districts "just pulled it off" and they did it without any written procedures in place.  Dr. Balchan insisted that it was best practice to create written protocols and procedures before launching a clinical program in the school setting.  She also emphasized that in addition to health services staff, there would be the need to have interdepartmental collaboration with building administrators, security, clerical, and public relations to run the program smoothly from start to finish.  Neither administrator

offered Dr. Balchan any further assistance, yet they both expected Dr. Balchan to execute a plan within the next two weeks.

79.     Dr. Balchan promptly met with her staff at 2 pm on December 3, 2020, and arranged for a nurse from a neighboring school district in Tarrytown, to discuss the launch and success of their testing program.  Dr. Balchan then created a document that outlined next steps, called "12-3-20 DRAFT COVID-19 Testing in Schools Planning Checklist," and shared it with Interim Superintendent Marrero and Mr. Reed for feedback and assistance to engage interdisciplinary teams (principals, security, clericals) to fulfill non-clinical roles identified by Dr. Balchan and the nursing staff.

80.     On the morning of December 7, 2020, Interim Superintendent Marrero texted Dr. Balchan about the status of the COVID-19 testing program, not having commented on her draft checklist.  Dr. Balchan replied to the text and sent an email to Interim Superintendent Marrero and Mr. Reed at 9:10 am, again looking for their assistance in getting the program off the ground.  Dr. Marrero added Ms. Reluzco to the email chain, but Dr. Balchan expressed her objection to including her in the conversation in a reply email.  Later that day, Dr. Charles Coletti, as Special Projects Administrator, contacted Dr. Balchan about being assigned by Dr. Marrero to assist Dr. Balchan with the testing program.

81.     Between December 8-11, 2020, Dr. Balchan and some of her staff developed the structure and protocol for the COVID-19 testing program with Dr. Coletti.  Upon information and belief, Dr. Coletti was approved for compensation to work through the weekend of December 12-13, 2020, editing the document drafted by Dr. Balchan and her staff.

82.     On Saturday, December 12, 2020, Dr. Balchan emailed the principal from Trinity Elementary school, Mr. Michael Hilderbrand, to inform him that the testing program was being finalized and that he should schedule a meeting with Interim Superintendent Marrero and Dr. Coletti before his school test site opened the following week.  Dr. Balchan attended the virtual meeting on Monday, December 14, 2020.

83.     On December 16, 2020, Dr. Balchan and her team executed the District's first on-site COVID-19 testing program.  There was no representation from District leadership or public relations officer, Mr. Valenti, at the site during the event. Nor was there any recognition or acknowledgement after Dr. Balchan emailed Interim Superintendent Marrero a summary at the end of the day, following the testing of 57 individuals.

**Unfounded investigation meeting related to staff notification on December 4-5, 2020**

84.     On Friday December 4, 2020, Ms. Reluzco sent Dr. Balchan a text at 1:54 pm, "Hi Brooke.  I need to speak with you regarding a possible COVID case in city hall.  Please call."  Dr. Balchan called Ms. Reluzco soon after she received the text.  During the call, Dr. Balchan learned that a staff member from the City Hall administration building was sent home sick and was going for COVID-19 testing.  Of significance, there was no report of a positive test result for this or any other staff person at City Hall.  At Ms. Reluzco's request, Dr. Balchan explained the protocol followed in the school buildings for when a lab test was pending for longer than 48 hours or through the weekend. Dr. Balchan specified that these situations did not call for a mandatory quarantine, but rather the building administrator would plan to close impacted classrooms and offices while waiting for the test results.  As a precaution only, principals would send notices about switching to remote status until further notice.   Dr. Balchan recommended that Ms. Reluzco relay this information to Interim Superintendent Marrero so that City Hall staff could plan accordingly before leaving for the weekend. Ms. Reluzco then asked Dr. Balchan to contact the staff tracking nurse, Ms. DeGeorge, to collect the list of names of those potentially exposed in the event the result returned positive and a quarantine was warranted.  At approximately 3:30 pm, Dr. Balchan forwarded two lists of names collected by Ms. DeGeorge to Ms. Reluzco, Interim Superintendent Marrero, and Mr. Reed.  Mr. Reed replied to one of the emails at 4:19 pm, acknowledging Ms. DeGeorge's work and confirming that staff would be notified of working remotely until further notice.

85.     On Saturday, December 5, 2020, a non-working day between approximately 11:30 am and 1:30 pm, when Dr. Balchan was unavailable, Ms. Reluzco sent several group text messages and an email to District leadership seeking immediate responses from Dr. Balchan.  Despite having an extensive conversation with Dr. Balchan on December 4, 2020, about there being no need for the staff at City Hall to quarantine, Ms. Reluzco made several assumptions in her messaging on December 5, 2020: #1, City Hall staff needed to quarantine, and #2, Dr. Balchan and Ms. DeGeorge failed to notify those staff.  During this two-hour time period on December 5, 2020, Ms. Reluzco did not attempt to call Dr. Balchan; rather, she directed Mr. Reed via text to notify Interim Superintendent Marrero and Deputy Superintendent Scordo under the presumption that Dr. Balchan did something wrong.  Just before 2 pm, Mr. Reed called Ms. DeGeorge, the staff tracking nurse who is assigned by Dr. Balchan to manage staff illnesses.  Ms. DeGeorge was able to clarify for Mr. Reed, a member of the District's leadership team and designated COVID-19 Safety Coordinator, that there was no need to quarantine any staff.  Ms. DeGeorge notified Dr. Balchan via text of her call with Mr. Reed, and indicated that he was contacting staff about working remotely on Monday.

86.     In the email from December 7, 2020, referenced in paragraph 78, Interim Superintendent Marrero then added Ms. Reluzco to the email chain and specified, "I am asking you [Dr. Balchan] to be at the forefront of our COVID-19 responses as the District COVID-19 Resource Person."  Dr. Balchan had concerns about Ms. Reluzco misguiding Interim Superintendent Marrero about COVID-19 related matters, and intentionally removed Ms. Reluzco from the email.  In the email, Dr. Balchan clarified her role as the COVID-19 Resource Person and Medical Director for the District, which is distinctly different from Mr. Reed's role as COVID-19 Safety Coordinator.  Dr. Balchan further pointed out that the demands being placed on her department were not sustainable without protected time off and that Mr. Reed had not yet clarified expectations for weekend and after hours work.  Instead of replying or communicating directly with Dr. Balchan, the District notified its legal counsel, who in turn contacted Mr. Saperstein, her union attorney.  Mr. Saperstein emailed Dr. Balchan

on December 8, 2020 asking Dr. Balchan to call him back when she can.  Dr. Balchan called Mr. Saperstein and learned that Mr. Mountanos, speaking on behalf of the District, thought it was inappropriate for Dr. Balchan to remove Ms. Reluzco from the email sent by the Superintendent.  Mr. Saperstein also shared that the District was seeking a fit for duty letter from Dr. Balchan's physician, following Dr. Balchan's November 2, 2020, request for workplace accommodations.  In an email later that day, Mr. Saperstein wrote, "the District is asking that your doctor state you are fit to work.  This is CYA in terms of potential liability.  If they wanted to be difficult, they could demand a [Education Law] 913 [examination], but they are only asking for the fit for duty letter from your doctor."  Upon information and belief, there was no mention by Mr. Mountanos to Mr. Saperstein that the District was investigating Dr. Balchan about any wrongdoing related to staff notification on December 4-5, 2020.

87.     After speaking to Mr. Saperstein on December 8, 2020, Dr. Balchan emailed Mr. Reed, "I would like to schedule a meeting with you to create a workable plan regarding expectations for Health Services Department staff outside of regular working hours.  The tracking team would like to meet with you to share their concerns and provide a creative solution to the district's ongoing needs due to COVID."  A meeting with Mr. Reed was scheduled for 9 am on Friday, December 11, 2020.

88.     On December 9, 2020, Dr. Balchan emailed Interim Superintendent Marrero for approval of three vacation days 12/10/20, 12/21/20, and 1/13/21 to ensure some protected time away from the office because of her work-related stress.

89.     On Friday, December 11, 2020, Dr. Balchan met with Mr. Reed and the staff tracking team of nurses.  The group met that day for approximately 3-4 hours working together to revise the Draft Staff Tracking Protocol for COVID-19 Absences.   The document outlined roles and responsibilities and addressed weekend coverage for the health services department.  The document was shared with Interim Superintendent Marrero via email at 4:07 pm on December 11, 2020, along with a request that he "take a look, as we would like to share with staff."

90.     On Friday, December 11, 2020, Dr. Balchan forwarded the doctor's note requested by the District from her physician to Mr. Reed.

91.     On Monday, December 14, 2020, Dr. Balchan missed a call from Mr. Reed at approximately 11:30 am.  In a text message to Mr. Reed, she asked, "Can I call you later?"  His reply at 11:33 am was, "GM- the Friday doc is in draft form and needs to be reviewed by central.  Please make sure it is not shared prior [to]."  Around the exact same time, 11:31 am on Monday, December 14, 2020, Dr. Balchan received an email from Interim Superintendent Marrero directing her "to attend a meeting with [Dr. Marrero] and Peter Scordo on Tuesday, December 15, 2020, at 2:00 pm to discuss certain concerns related to your performance."  The email offered Dr. Balchan the right to union representation.

92.     Later in the afternoon on Monday, December 14, 2020, Dr. Balchan emailed her new supervisor, Dr. Jackielyn Manning-Campbell, who started working in the District that day, "I also wanted to invite you to my department meeting tomorrow at 11 am.  I've invited Dr. Coletti and Dr. Marrero because we are actively finalizing the on-site covid testing plan before it gets announced at tomorrow night's BOE meeting."

93.     The next day, December 15, 2020, Dr. Balchan attended Interim Superintendent Marrero's investigative meeting virtually with two union representatives, Ms. Kimmerly Nieves and Ms. Passarelli.  Dr. Balchan was interviewed by Dr. Marrero and Mr. Scordo, with Mr. Reed acting as a notetaker, not in his capacity as the Assistant Superintendent of Human Resources.  During the meeting, Dr. Balchan discovered that she was again being targeted and harassed by District leadership after Ms. Reluzco's misinterpretation of COVID-19 protocols for sick staff members with pending lab results, on December 4-5, 2020.  Dr. Balchan expressed the non-emergent nature of the situation and its resolution after the appropriate nursing staff member was contacted by Mr. Reed.  Dr. Balchan further expressed that she had concerns about Ms. Reluzco's ineptitude regarding COVID-19 related issues, and stated that there was no merit in continuing the investigation.  Mr. Scordo became

aggravated during the meeting, stating he believed the staff notification issue was an emergency and that he would continue to look into the situation.  Dr. Balchan challenged the "emergency" nature of the issue by asking why she did not receive a phone call on Saturday, December 5, 2020, and why it took 10 days from the date of the incident to speak to Dr. Balchan about the circumstances.   Mr. Scordo projected his belief that Dr. Balchan should "be on 24/7/365."  Dr. Balchan shared that the District was violating her union contract by not providing 2-day notice.  Lastly, Dr. Balchan discussed that she found it curious that Mr. Reed did not notify her of the District's concerns on Friday, December 11, 2020, after spending 3-4 hours reviewing a draft multi-page document addressing staff illness, notification, and weekend coverage devised by Dr. Balchan and her staff.

94.     That night, December 15, 2020, Dr. Balchan was not invited to participate in the BOE meeting to announce the debut of the on-site COVID-19 testing program she worked so hard to create.  During the meeting, Interim Superintendent Marrero wasted a COVID-19 test kit from an unknown source.  Despite knowing the test kits were in limited supply and only being allocated to school buildings designated by Governor Cuomo, he demonstrated swabbing his own nose, and then he discarded the sample before reading the result during the live virtual meeting.

95.     Mr. Saperstein reported in a December 16, 2020 email to Dr. Balchan that Mr. Mountanos contacted him about the December 15, 2020, meeting with Dr. Balchan "that didn't go well."  Mr. Mountanos requested to meet with Dr. Balchan on December 18, 2020, with union representation. This notification triggered Dr. Balchan's documented medical condition because she felt personally and professionally attacked.

96.     On December 17, 2020, Dr. Balchan met virtually with her union advocates, Mr. Saperstein, Ms. Passarelli and Ms. Nieves, to strategize her next steps as a union member.  Dr. Balchan disclosed to Mr. Saperstein, in contrast to what was relayed by Mr. Mountanos to Mr. Saperstein, that she felt the meeting went very well because she had explained that she had done nothing wrong.  Dr. Balchan felt disheartened, defeated, and disrespected by District leadership.  Dr. Balchan, as the

District's Medical Director, created solutions to nearly every COVID-19 related problem the District faced during 2020, in order to keep its programs operational throughout the pandemic.   The District refused to respect or acknowledge Dr. Balchan's medical expertise and guidance, interpretation of protocols, and need for protected time off, and now was retaliating against her for calling out Ms. Reluzco's failure to comprehend COVID-related protocols.

97.     On December 17, 2020, Dr. Balchan became so overwhelmed with fear and anxiety that she notified her supervisor, Dr. Manning-Campbell, that she was not feeling well and took the afternoon off as sick time.  Dr. Balchan wanted to share with Dr. Manning-Campbell her concern about the District conducting an unnecessary investigation, without disclosing any specifics, but Dr. Manning-Campbell told her that she could not get involved.  Dr. Balchan felt disrespected, under attack, and not supported by top leadership and District counsel.  Dr. Balchan remained in contact with her supervisor over the next week and provided a doctor's note because she remained unwell and unable to return to her toxic work environment to continue her duties.  Furthermore, Dr. Balchan felt that her employment rights were being threatened and sought private legal counsel.

98.     On December 18, 2020, Dr. Balchan's meeting with Mr. Mountanos was cancelled due to her medical absence.  Dr. Balchan advised her principal clerk to keep her department meeting scheduled as planned so that Dr. Manning-Campbell could meet and address the health services staff. At the end of the day, Dr. Balchan was notified by members of her nursing staff that Ms. Reluzco joined the department meeting, held at a rescheduled time of 2:30 pm on December 18, 2020, with Dr. Manning-Campbell.  Several staff members reported back to Dr. Balchan that Ms. Reluzco was rude and conducted herself as if she was "taking over the department."  Ms. Reluzco reportedly informed staff that they would no longer be eligible for overtime and that she was going to change the working hours for school nurses.  None of this information had been shared with Dr. Balchan before it was presented to her direct reports. The nursing staff reported to Dr. Balchan that Ms. Reluzco's unusual behavior raised concerns about the future of the department and Dr. Balchan's employment.  In a text

36

message from one of the District's nurses, Andrea Seltzer, she writes, "I'm very sad.  I feel something bad is going on, after that meeting.  I hope u are ok.  If not medical related make sure u have good legal."  Upon information and belief, Ms. Reluzco played a key role pursuing an investigation into Dr. Balchan's job performance and felt confident in her own allegations that she began interfering in other ways, such as destabilizing Dr. Balchan's health services team.

## **Illegal vaccine program**

99.     On January 7, 2021, Dr. Balchan received a community-wide email at 12:34 pm from Interim Superintendent Marrero in her personal account, as a parent of students in the District.  The email detailed a plan to transport school staff from each building by bus to Montefiore New Rochelle Hospital between January 8, 2020 and January 15, 2020, to receive the Moderna vaccination for COVID-19.  Dr. Balchan, as a private citizen, was concerned about the legality of this plan because non-medical school staff had not yet been prioritized by Governor Cuomo to receive the vaccine.  Concerned about the legal and financial penalties for both the District and the hospital, for failure to comply with the Governor's orders, Dr. Balchan contacted Dr. Sherilita Amler, Health Commissioner of the Westchester County Department of Health.  Dr. Balchan also made calls to inquire about the program through the NYSDOH Coronavirus hotline and a physician colleague working at Montefiore New Rochelle.  She confirmed that the only school staff that were eligible for COVID-19 vaccines, as of January 7, 2020, were medical staff (school nurses, doctors, clinic staff) and direct service providers, such as physical, occupational and speech therapists.  A few hours later, the COVID-19 immunization program at Montefiore New Rochelle Hospital was shut down by the state.  At 9:04 pm on January 7, 2021, Interim Superintendent Marrero emailed the school community about the cancellation of the scheduled staff vaccinations.  Several news outlets covered the story and Montefiore New Rochelle was penalized with a monetary fine and the loss of its COVID-19 vaccination program.  A local blog ran a story with the headline, "New Rochelle School Medical Director Not Consulted on Board of Ed's

Illegal Vaccine Plan."  Dr. Balchan believes that District leadership, including the BOE, then took steps to silence her indefinitely by illegally preventing her from returning to her position.

## 2) **FMLA INTERFERENCE AND RETALIATION VIOLATIONS**

100.    On December 28, 2020, during her scheduled holiday break, Dr. Balchan notified Dr. Manning-Campbell by phone, after being out since the afternoon on December 17, 2020, that she would need to take extended medical leave.  An email followed on December 29, 2020, in which Dr. Balchan provided resources for managing the department in her absence, including back-up physician and nurse practitioner coverage.

101.    On December 29, 2020, Dr. Balchan submitted an FMLA packet completed by her physician to Mr. Reed.  Mr. Reed acknowledged the receipt via email and inquired about whether Dr. Balchan was seeking paid or unpaid FMLA. Mr. Reed directed Dr. Balchan to record her own absences in AESOP, the District absence management system, "as sick days, until further notice."  Dr. Balchan emailed him back on January 30. 2020, for clarification, but received no further guidance or information explaining her FMLA request.

102.    Also on December 29, 2020, Dr. Balchan's private attorney, Ms. Elizabeth Hunter, notified Mr. Mountanos via email that she was retained, at that time, to represent Dr. Balchan through the District's investigation and to protect her FMLA rights.  On or about that date, Ms. Hunter spoke to Mr. Mountanos over the phone.  Ms. Hunter relayed that conversation to Dr. Balchan, stating that the District intended to deny or dispute her FMLA request, would be sending her for a 913 evaluation, and was going to report Dr. Balchan to the medical licensing board because of serious concerns about her performance.  Education Law section 913 states that the board of education of any school district "shall be empowered to require any person employed by the board of education…to submit to a medical examination in order to determine the physical or mental capacity of such person to perform his or her duties."

38

103.    Upon information and belief, on or before January 5, 2021, District leadership and/or District counsel defamed Dr. Balchan before the BOE, not only by falsely accusing her of wrongdoing in her professional capacity, but by maliciously discussing Dr. Balchan's medical information in the context of her job performance, in their attempt to invalidate her condition and disrupt or terminate her employment. Misled, the BOE approved resolution 21-217-17, "that pursuant to Education Law 913, the employee discussed in executive session is directed to report for a medical examination in order to determine the mental/physical capacity of such person to perform his/her duties." Prior to this date, the District made no effort to communicate with Dr. Balchan or her physician for clarification of her condition.

104.    On January 6, 2021, Dr. Balchan received a hand-delivered letter directing her to attend a virtual medical evaluation by a BOE-appointed physician Dr. Andrew Levin on January 15, 2021, to determine her fitness for duty. Of note, Dr. Balchan's original FMLA leave indicated that she would be out of work until April 2021, and fitness for duty determinations are generally conducted prior to one's return from leave. Additionally, Dr. Balchan had yet to receive any District communication about her FMLA rights or a determination status regarding her leave request. A letter was sent to Mr. Mountanos by Dr. Balchan's attorney on January 8, 2020, further citing the Section 913 examination directive to be an improper procedure for evaluating Dr. Balchan's FMLA request.

105.    On January 14, 2021, Dr. Balchan received a call from her principal clerk, Ms. Natalie Ali, informing her that Ms. Ali was approached by Dr. Charles Coletti, a retired superintendent serving as a District consultant, to inquire about whether Dr. Balchan was "suspended." Ms. Ali reported that she replied, "no, she is on a medical leave." Ms. Ali recalled that Dr. Coletti laughed it off when she responded. Dr. Coletti has directly benefited from Dr. Balchan's absence, with increased involvement with the Health Services Department, including relocation to an office in close proximity to Dr. Balchan's staff to support the COVID-19 on-site testing program.

106.     On January 15, 2021, the date of Dr. Balchan's required medical evaluation, the District posted a special notice on its COVID Resource Center on the District website, announcing, "District Medical Director Brooke Balchan, DO, FAAP, will be absent from work on a temporary basis. The District will not be commenting any further on the absence. We are pleased to announce that the District has retained the services of Dr. Louis Corsaro to temporarily serve as our Medical Director during this period of absence. Dr. Corsaro has a wealth of experience servicing school districts in this capacity. Please be assured that Dr. Corsaro together with our outstanding existing staff serving in the Health Services Department will ensure that all of the District's medical needs are met during this interim time period."  The messaging made it unclear to the school community as to the rationale for Dr. Balchan's absence, leading many to believe Dr. Balchan had left the District.  Additionally, the District did not engage with the medical providers suggested by Dr. Balchan; instead, it provided Dr. Corsaro, a physician without any connection to the District, a consulting contract for the full duration of the school year.  Dr. Balchan was not intending to extend her medical leave beyond 12 weeks.  Dr. Corsaro was appointed by the BOE on January 15, 2021, in resolution 21-241.

107.     The December 18, 2020, investigative meeting with Mr. Mountanos was rescheduled to January 25, 2021.  On Friday, January 22, 2021, Mr. Mountanos tried to postpone the investigative meeting further.  Dr. Balchan expressed her irritation to Ms. Hunter, having been directed to attend this meeting during her medical leave time.  Ms. Hunter emailed Mr. Mountanos back, "This is very frustrating.  You had emphasized that this interview had already been delayed too much and it needed to be completed as soon as possible."  The meeting then proceeded as planned on January 25, 2021.

108.     On January 25, 2021, during the investigative meeting, Dr. Balchan defined her role for Mr. Mountanos, described the non-emergent nature of the December 4-5, 2020 situation, and explained that it had been resolved with other staff who were trained and capable of following the protocols without Dr. Balchan's input on a non-working day.  After the two-hour interrogation, Mr.

Mountanos insisted that the matter had to be looked into further. Mr. Mountanos requested Dr. Balchan's presence at another meeting the following week.

109. On January 28, 2021, Dr. Balchan received an email from Mr. Reed notifying her that she had exhausted her sick and personal days and would be placed on an "unpaid status." Dr. Balchan notified Mr. Reed and Dr. Manning-Campbell the same day that her physician cleared her to return to work, effective January 29, 2021. Dr. Balchan forwarded an electronic clearance note to Mr. Reed by email. Then, in two separate email responses from Dr. Manning-Campbell, Dr. Balchan learned that the District was interfering with her return to work, requiring a more specific clearance letter from Dr. Balchan's physician and questioning whether she was rescinding her FMLA request. Once received, the District would then consider whether to permit her back to work. Until then, Dr. Balchan was prohibited from meeting with her staff. Dr. Balchan notified Dr. Manning-Campbell, Mr. Reed, and Interim Superintendent Marrero after 5 pm that day, that she would produce their requested letter and return it in the morning. No one replied. However, Mr. Reed sent an email at 7:36 pm, revising Dr. Balchan's sick day balance, to inform her that she would be on unpaid status as of Tuesday, February 2, 2021; the same day she was scheduled to meet with Mr. Mountanos again.

110. The next morning, January 29, 2021, Dr. Balchan picked up a signed letter from her doctor's office and had it hand-delivered and emailed to Mr. Reed. Dr. Balchan did not receive any response from either Mr. Reed or Dr. Manning-Campbell during the work day about her ability to resume her job functions. After notifying her union representatives by email at 10:04 am, Ms. Nieves (union co-president) replied back stating, "Alex called me last night as the A&S representative. He stated once they have your doctor's note on letterhead, they will review it and get back to you. It does not sound like the process will be that long." At 4:15 pm on January 29, 2021, Interim Superintendent Marrero sent an email to Dr. Balchan, "This letter is sent in connection with the medical certificate you submitted earlier this morning wherein your doctor advises that you are cleared to return to work as of today, January 29, 2021. Please be advised that I am administratively reassigning you to home until

the pending 913 evaluation process is completed by the Board's appointed physician, Dr. Andrew Levin.  The foregoing includes the implementation of any and all recommendations set forth in his written report (to the extent applicable)...Please be advised that during the period of your administrative reassignment I am directing you to refrain from contacting, orally or in writing, any staff members concerning any District-related business and/or any matters related to your job responsibilities.  Should you have the need to communicate any information to any staff members you may reach out to Dr. Campbell who will then facilitate the communication of such information to the extent necessary. Please be further advised that during the period of your reassignment you will not be charged any leave days nor will your salary or benefits be impacted in any way."

111.    Dr. Balchan attended the second virtual investigative meeting with Mr. Mountanos at 2 pm on February 4, 2021, with Ms. Passarelli and Ms. Hunter in attendance.  Ms. Kristen Marotta, an associate of Mr. Mountanos, was in attendance from the same office space, but not visible for the duration of the meeting after Dr. Balchan noted that neither were wearing face masks.  Dr. Balchan attended from her home.  During the 90-minute fact finding investigation, Mr. Mountanos, acting on behalf of the District, did not remain neutral.  Dr. Balchan perceived Mr. Mountanos to be conducting himself in a very threatening and intimidating manner. Mr. Mountanos' speech was animated and aggressive and he did not permit Dr. Balchan or Ms. Hunter an opportunity to interject.  The volume of his voice became louder as he yelled at Dr. Balchan demanding different answers to questions that had already been answered.  Out of concern for Dr. Balchan's health, Dr Balchan's husband interrupted the meeting on several occasions.  The breaks allowed Dr. Balchan to calm her nerves with breathing exercises.  Mr. Mountanos became paranoid that others were listening in on the meeting and accused Dr. Balchan of disclosing details of the prior meeting to others. At one point, Dr. Balchan overheard Mr. Mountanos expressing his irritation to Ms. Hunter and Ms. Passarelli about her family's interruptions when Dr. Balchan had briefly stepped away from the computer.  At the close of the meeting, Mr. Mountanos indicated that he had received the 913 report on February 3, 2021, but

withheld the report and the doctor's findings from Dr. Balchan and her attorney.  Dr. Balchan recorded her experience in an email to Ms. Passarelli, Ms. Nieves, and Mr. Saperstein at 6:27 pm on February 4, 2021, because "No one should have to experience or tolerate this discriminatory behavior.  As a woman, there is no room for this type of male dominating behavior in any environment."

112.    On February 5, 2021, Ms. Hunter had an unofficial conversation with Mr. Mountanos, learning that he intended to keep the investigation open.  Mr. Mountanos reported to Ms. Hunter that Dr. Levin, the BOE-appointed physician, found Dr. Balchan fit to perform her duties.  Dr. Balchan had a clearance from her own doctor and from the District's doctor to return to her position, yet Mr. Mountanos denied her return to work and failed to honor the terms of the administrative reassignment outlined in Interim Superintendent Marrero's email from January 29, 2021.  Mr. Mountanos then advised Ms. Hunter to discuss a separation agreement with Dr. Balchan as the next course of action.

113.    On February 8, 2021, Dr. Balchan attended the American Academy of Pediatrics Chapter 3 School Health Committee meeting with her colleagues, a group she has been affiliated with since 2012.  Dr. Corsaro attended the meeting, for the first time.  Immediately following Dr. Balchan's introduction to new attendees as the Medical Director for the City School District of New Rochelle, Dr. Corsaro followed and proceeded to introduce himself as the medical director for the City School District of New Rochelle, without any acknowledgement of Dr. Balchan.

114.    On February 9, 2021, Dr. Balchan filed a complaint with the New York State Division of Human Rights because she felt she was being discriminated against based on her disability and gender.

115.    Dr. Balchan received an email copy of the 913 report on February 10, 2021. Dr. Levin reported that, "it is my opinion to a reasonable degree of medical certainty that Dr. Balchan **is fit for duty to perform her duties as Medical Director for the district**."  This is the same day that Interim Superintendent Marrero sent a District-wide email announcing that he and Dr. Corsaro, Interim Medical Director, would lead a series of Town Hall meetings for parents and community members to

engage in a dialogue with District leadership.  Town Hall meetings were part of Dr. Balchan's reopening plans, but were not planned until her absence.  Dr. Balchan informed her union representatives by email that night that she was concerned about the announcement, involving an interim medical director in community discussions, when she was cleared to resume her position.

116.    On February 11, 2021, after receiving clearance from two physicians, Dr. Balchan emailed Mr. Reed, Assistant Superintendent of HR, to advise on her ability to return to her position. Dr. Balchan did not receive any response from Mr. Reed.  Instead, Mr. Mountanos contacted Mr. Saperstein, Dr. Balchan's union representative.  In an email to Dr. Balchan on February 11, 2021, Mr. Saperstein stated, "Gus reached out to me to see if you had any interest in what he referred to as exploratory off the record discussions he had with Liz about a severance arrangement.  I indicated it was my understanding that your interest was in returning to work, but I would verify that and if I was in error about your intentions I would let him know."  Mr. Mountanos would not provide a date the District would permit Dr. Balchan to return to work, but relayed that the matter would be discussed with the BOE on February 23, 2021.

117.    On February 16, 2021, on behalf of Dr. Balchan, Ms. Passarelli, co-president of the CSD of New Rochelle Administrative and Supervisory Unit, emailed a letter to Interim Superintendent Marrero, Mr. Reed, and the BOE, requesting her reinstatement.  On February 22, 2021, Ms. Passarelli contacted Mr. Reed's office to see if he had received her letter, but did not get a reply.

118.    On February 23, 2021, Dr. Balchan received a letter dated February 19, 2021, from Ms. Linda Fenstermaker, Regional Director of the NYSDHR, indicating that the state opened an investigation into her complaint against the District.

119.    On February 24, 2021, Ms. Passarelli received an email from Interim Superintendent Marrero stating that the District had not yet made a determination in regard to Dr. Balchan's employment status.

120.    On or about March 3, 2021, Dr. Balchan contacted the United States Department of Labor (DOL) to report that her FMLA rights were violated.

121.    On March 9, 2021, Mr. Saperstein contacted Mr. Mountanos because Dr. Balchan received several email reminders and a calendar invite from Mr. Reed to attend a virtual administrator workshop, titled "Presentation on Discipline by Gus Mountanos."  Dr. Balchan was advised to contact Mr. Reed directly.  Mr Reed's response excused her from the workshop, referencing that she was on a "leave of absence."  Dr. Balchan had not been informed by the District that she was on a leave of absence.  Her only understanding was that she had been administratively reassigned.  To clarify, Mr. Saperstein emailed Mr. Mountanos to determine, "Precisely what is Dr. Blachan's employment status and what is impeding her return to work?"  Mr. Mountanos replied by email on March 9, 2021 at 5:15 pm, that he was no longer involved and "[his] partner Emily Lucas is now handling all aspects of this matter."  Upon information and belief, Mr. Mountanos was removed from the case because he was named in Dr. Balchan's complaint to the New York State Division of Human Rights.

122.    On March 9, 2021, the District published a draft budget presentation for the 2021-2022 school year.  Dr. Balchan is the administrator who manages the health services budget on an annual basis; however, District leadership reduced her health services budget by $146,637 without discussing the change or the rationale with Dr. Balchan.

123.    On or about April 8, 2021, Dr. Balchan learned from Ms. Fernandez, the DOL case supervisor, that the District would be cited for FMLA notification violations.  Ms. Fernandez informed Dr. Balchan that the case was closed and a copy could be requested through the Freedom of Information Act (FOIA).  Ms. Fernandez also told Dr. Balchan that she could not assist with her reinstatement due to the District's response that there was pending disciplinary action against Dr. Balchan.

124.    Mr. Reed resigned from his position as Assistant Superintendent of Human Resources on April 14, 2021, board resolution number 21-307.

45

125.    On April 21, 2021, the United States DOL acknowledged Dr. Balchan's FOIA (Freedom of Information Act) request to obtain a record of the investigation they conducted on her behalf.

126.    On Saturday, April 23, 2021, Dr. Balchan was notified by the American Academy of Pediatrics that she was selected as a recipient of the 2020 Special Achievement Award recognizing her outstanding work as a pediatrician leader in her community through her COVID-19 response in New Rochelle. On Monday, April 26, 2021, Dr. Balchan shared this announcement with Dr. Manning-Campbell so she could inform the nursing staff and forward it to Human Resources to add to her personnel file.  Dr. Manning-Campbell did not acknowledge or respond to the email.

127.    On May 19, 2021, Interim Superintendent Marrero sent an email communication to staff with notice that the City Manager of New Rochelle, Chuck Strome, was lifting the mask mandate for City Hall.  District staff work in the City Hall building.  Dr. Balchan emailed her supervisor on May 20, 2021, Dr. Manning-Campbell to look into the matter further, as Governor Cuomo and the CDC have both prohibited schools from lifting the mask mandate.  Dr. Balchan has not received a response.

128.    On May 20, 2021, Dr. Balchan received the NYSDHR Determination and Order of Dismissal for Administrative Convenience letter in the mail.

129.    Dr. Balchan has been wrongly silenced and removed from her position as Medical Director of the City School District of New Rochelle by those in top leadership positions.  Dr. Balchan is able, willing, and ready to return to work in her full capacity.  Dr. Balchan has been retaliated against for speaking up about matters of health and safety by individuals who are charged with leading the District, including those designated by the BOE as Human Rights Coordinators and Affirmative Action Officers.  Dr. Balchan remains reassigned to home without an end date, without an explanation, and has not been afforded her right to due process by way of a biased and unfair investigation. Additionally, Dr. Balchan's professional growth through the COVID-19 pandemic has been stunted by the

unfounded removal from her position. Dr. Balchan feels humiliated and is concerned that her reputation and standing as Medical Director for the District is forever tarnished.  The damages to her department's structure may be irreparable.  As a result of Defendants' retaliatory and defamatory actions, Dr. Balchan has suffered ongoing emotional damages and psychological distress, loss of personal and sick time, and potential loss of additional income during the upcoming summer months, in addition to financial loss due to legal representation to protect her employment rights.

## FIRST CLAIM FOR RELIEF

### RETALIATION AGAINST PLAINTIFF FOR EXERCISING FREEDOM OF SPEECH IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS
### (AGAINST ALL DEFENDANTS)

130.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

131.    While acting under color of State Law, Defendants violated Plaintiff's First Amendment rights by retaliating against her for exercising her freedom of speech as a citizen with regard to matters of public concern, specifically, *inter alia*,  regarding reporting the following:

a.   The former Superintendent's failure to acknowledge that schools were not safe at the start of the COVID-19; delaying the closure of schools until after reporting her actions as unethical to the New York State Department of Health and Governor's Office.

b.   Failure of the former Superintendent to notify families of students who were exposed to her when she was symptomatic with COVID-19 infection, despite being notified that her actions could be construed as child abuse in an educational setting, subsequently reported to the New Rochelle Police Department.

c.   Failure of the Interim Superintendent to abide by Governor Cuomo's COVID-19 vaccine eligibility schedule by creating an accelerated pathway for staff to obtain

vaccines at Montefiore Hospital in early January 2021, which was reported to Westchester County Department of Health and New York State Department of Health.

132.     As a proximate result of Defendants' retaliatory actions against Plaintiff, she has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to her professional reputation, in an amount to be determined at trial.

133.     The District also has denied Plaintiff additional compensation for extended working hours and responsibilities expected of her due to COVID-19.   Plaintiff also was not invited to attend the COVID-19 Town Hall meetings held in February 2021.   The District, instead, sent email communications to the school community promoting the Interim Medical Director, Louis Corsaro, as a co-facilitator of the events and as a co-signer of COVID-19 related updates, a practice that was not reciprocated with Dr. Balchan.

**SECOND CLAIM FOR RELIEF**

**RETALIATION IN VIOLATION OF NEW YORK STATE CIVIL SERVICE LAW § 75-B**
**(AGAINST ALL DEFENDANTS)**

134.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

135.     Plaintiff reported improper governmental actions including violations of federal and state law by the school administration, thereby engaged in a protected activity as defined in New York Civil Service Law § 75-b(2)(a).

136.     Defendants had notice that Plaintiff participated in such protected activities.

137.     Defendants retaliated against Plaintiff by engaging in adverse "personnel actions" against her as defined by New York Civil Service Law § 75-b(1)(d).

138.     As a proximate result of Defendants' retaliatory actions against Plaintiff, she has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation,

48

severe emotional distress, mental and physical anguish and suffering, and damage to her professional reputation, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

### FMLA INTERFERENCE AND RETALIATION
#### (AGAINST ALL DEFENDANTS)

139.    Plaintiff repeats and realleges each and every allegation contained above, inclusive, with the same force and effect as if more fully set forth herein.

140.    Defendants have interfered with Plaintiff's FMLA rights by failing to notify her of her rights, and further retaliated against her for asserting such FMLA rights by failing to reinstate her after a qualified FMLA leave.  The District also has subject Plaintiff to unauthorized disclosure of her protected health information and an improper request for a fitness for duty examination.

141.    Plaintiff also has been retaliated against by the District for filing a US Department of Labor complaint in March 2021 against the District citing FMLA violations, with continual exclusion from communicating directly with staff or engaging in any activity related to her role as Medical Director for the District and denial of inclusion in community town hall meetings related to COVID-19, denial of appropriate recognition for her accomplishments throughout the COVID-19 pandemic and crucial role she played in the reopening of schools to keep staff and students safe.

### JURY DEMAND

Plaintiff hereby demands a trial by Jury.

### PRAYER/DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor against Defendants as follows:

a.    Judgment declaring that Defendants acts violated Plaintiff's rights as secured by federal and state law prohibiting retaliation in employment;

b.      Enjoining defendants from any further acts adversely affecting the terms and conditions of Plaintiff's employment including her compensation and privileges;

c.      Compensatory damages to compensate Plaintiff for economic loss, damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish, embarrassment, indignity, and dislocation, in an amount to be determined at trial;

d.      Punitive damages against one or all of the Defendants;

e.      Statutory attorneys' fees, interest, costs, and disbursements, and

f.      For such other and further legal, equitable or other relief as the Court deems just and proper.

DATED:      New York, New York
            May 28, 2021

                        GLASS HARLOW & HOGROGIAN LLP
                        85 Broad Street, 16th Floor @ WeWork
                        New York, NY 10004
                        (212) 537-6859

                By:     s/ Bryan Glass
                        BRYAN GLASS, ESQ.