UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BROOKE BALCHAN,

                Plaintiff,

-against-

CITY SCHOOL DISTRICT OF NEW
ROCHELLE., et al.,

                Defendants.

**OPINION AND ORDER**

21-CV-04798 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Dr. Brooke Balchan ("Plaintiff") brings this action against her employer, the City School District of New Rochelle ("District"), former Superintendent Laura Feijoo ("Feijoo"), former Interim Superintendent Alex Marrero ("Marrero"), former Deputy Superintendent Peter Scordo ("Scordo"), former Executive Administrator for Human Resources Ana Reluzco ("Reluzco"), Board of Education member Amy Mosehli ("Mosehli"), former Assistant Superintendent of Human Resources Ryan Reed ("Reed"), and Assistant Superintendent of Student Services Jackielyn Manning-Campbell ("Campbell") (collectively, "Defendants"). Plaintiff filed her initial Complaint on May 28, 2021. (Doc. 1). On August 11, 2021, with the Court's leave, Plaintiff filed her First Amended Complaint ("FAC"). (Doc. 11). On November 15, 2022, Plaintiff filed with the Court's permission her Second Amended Complaint ("SAC"), the operative pleading at this juncture. (Doc. 39, "SAC").

Plaintiff presses eight claims for relief in the SAC: (i) Retaliation for exercising freedom of speech in violation of the First Amendment (asserted against all Defendants); (ii) Retaliation in violation of New York State Civil Service Law § 75-b (asserted against all Defendants); (iii) FMLA Interference and Retaliation (asserted against District, Reed, Marrero, Reluzco, and Manning-Campbell); (iv) Gender Discrimination in violation of Title VII (asserted against

District); (v) Violation of the Equal Pay Act (asserted against District); (vi) Gender Discrimination under New York State Human Rights Law (asserted against all Defendants); (vii) Disability Discrimination under the Americans With Disabilities Act ("ADA") (asserted against District); and (viii) Disability Discrimination under New York State Human Rights Law (asserted against all Defendants). (*See generally* SAC).

Defendants served, pursuant to the briefing schedule set forth by the Court, their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 5, 2022. (Doc. 48; Doc. 49, "Miranda Decl."; Doc. 50, "Lucas Decl."; Doc. 51, "Lucas Reply Decl."; Doc. 52, "Def. Br."). Plaintiff served her opposition on December 9, 2022. (Doc. 53, "Pl. Br."; Doc. 54, "Glass Decl."), and the motion was briefed fully with the filing of Defendants' reply (Doc. 32, "Reply") and all motion papers on December 16, 2022.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff, a pediatrician, was hired as the Medical Director for the City of New Rochelle School District in July 2017. (SAC ¶ 20). As Medical Director for the District, Plaintiff's responsibilities included, *inter alia*, the following duties: (i) "direct, coordinate and supervise mandated health services . . ."; (ii) "assure compliance with State and Federal Laws pertaining to health requirements . . ."; (iii) "interpret Public Health Laws governing control of communicable diseases and establish procedures governing the exclusion and readmission of pupils with infections and/or contagious diseases"; and (iv) "supervise the procedures for immunization requirements and monitor any epidemics that occur." (*Id.* ¶ 21). Plaintiff alleges that she is experienced and qualified for the role of Medical Director, and that she is well respected by her peers throughout the state. (*Id.* ¶¶ 21-22).

I.    Disctrict's COVID-19 Response and Retaliation

When the COVID-19 pandemic was prevalent in early March 2020 in the City of New Rochelle, Plaintiff voiced concerns over the District's response to the pandemic. (*Id.* ¶ 23). Specifically, Plaintiff felt school closure was needed to mitigate widespread community transmission. (*Id.* ¶ 26). However, Superintendent Feijoo refused to meet with her regarding her proposed revisions to the District's P.R.E.P. (COVID-19 response) Plan. (*Id.* ¶¶ 25-26). Plaintiff further alleges that the District silenced her with respect to their COVID-19 plan and impeded her efforts to keep the school community informed, prepared, and safe. (*Id.* ¶ 23).

Later in March 2020 Plaintiff again raised concerns about the community's health and safety and urged the District to close schools. (*Id.* ¶¶ 26-34). Plaintiff voiced these concerns directly to District leadership in her capacity as Medical Director, as well as to her city councilwoman, fellow physicians, a Homeland Security agent, state and county health departments, parents in the community, and attorneys from Governor Cuomo's Office, in her capacity as a private citizen. (*Id.* ¶¶ 26-28, 32-34). On March 12, 2020, all the schools in New Rochelle were ordered closed. (*Id.* ¶ 34).

Plaintiff's criticisms of the District and Superintendent Feijoo continued after school closure. On March 23, 2020, Plaintiff reported Superintendent Feijoo to the Board of Education members, District counsel, and the New Rochelle Police Department for failure to notify families of their potential exposure to COVID-19. (*Id.* ¶ 36). She also joined in submitting a letter expressing a lack of confidence in Superintendent Feijoo's leadership. (*Id.* ¶ 40). In January 2021, she reported violations of New York State Department of Health rules regarding the District's vaccination plan. (*Id.* ¶ 48).

After her speech Plaintiff alleges that Superintendent Feijoo made efforts to marginalize and silence her. (*Id.* ¶¶ 27-28, 30, 40). For example, though Plaintiff was named the health committee chairperson for the District's school reopening committee, Plaintiff claims she was intentionally excluded from meetings, information was withheld from her, and her committee's work was dismantled under the direction of Superintendent Feijoo. (*Id.* ¶¶ 37-38).

On December 15, 2020, Plaintiff learned that she was under investigation for her handling of staff illnesses on December 4-5, 2020. (*Id.* ¶ 44). On December 28, 2020, after being out on sick leave for several days, Plaintiff notified the District that she needed to take an extended medical leave. (*Id.* ¶¶ 51-52). Plaintiff was allegedly instructed to record her absences "as sick days, until further notice." (*Id.* ¶ 52). Then, on January 28, 2021, Plaintiff was notified that she had exhausted her sick and personal days. (*Id.* ¶ 56).  Plaintiff informed the District the next day that her doctor had cleared her for work. (*Id.* ¶ 57). In response, the District administratively reassigned Plaintiff to her home pending a Section 913 medical evaluation to determine her fitness for duty. (*Id.* ¶¶ 54-57). This administrative leave did not charge Plaintiff any leave days, nor did it impact her salary or benefits. (*Id.* ¶ 57). On February 5, 2021, Plaintiff was medically cleared to return to work by her own doctor and the District's doctor. (*Id.* ¶ 58). However, the District denied her return to work. (*Id.* ¶¶ 58-59).

Despite her medical clearance and requests to be reinstated, Plaintiff remained on paid administrative leave from January 2021 to September 2022. (*Id.* ¶¶ 54-57, 110). During that time, she allegedly continued to experience acts of retaliation from the District. (*Id.* ¶ 24). For instance, Plaintiff was prohibited from performing any of her official duties or communicating with staff, and the District hired an Interim Medical Director to replace her. (*Id.* ¶¶ 49-50, 58).

Also, in June 2021, Plaintiff's summer work proposal was not submitted to the Board for approval, thereby causing her a loss of income. (*Id.* ¶¶ 69-71).

Further, Plaintiff alleges more recent acts of retaliation including that the Interim Medical Director's contract was renewed as for the 2022-2023 school year, she received a suspension letter discussing suspension without pay, her health benefits coverage lapsed for several weeks, she was denied additional paid summer work, and her salary amount was reduced to only 54% of her standard pay. (*Id.* ¶¶ 102-107).

Plaintiff attended a reentry meeting with the District in September 2022. (*Id.* ¶ 110). In October 2022, Plaintiff was cleared to return to work by the District under unclear organizational circumstances, and not as the permanent District Medical Director. (*Id.* ¶¶ 110, 112).

II.    Gender and Disability Discrimination

Plaintiff alleges that at the time she was hired, the salary schedule matched the title of a Medical Supervisor, not Medical Director, resulting in a $35,282 salary discrepancy. (*Id.* ¶ 77). Mr. Deepak Marwah, a male employee, was hired as a director and received a salary conducive to a director title.  (*Id.* ¶ 78). Likewise, Mr. Brendan Gallivan, a male employee, was hired as a director with corresponding salary. (*Id.* ¶ 78). Plaintiff also alleges that she did not receive an annual $4,000 stipend which was awarded to previous Medical Directors. (*Id.* ¶ 81).

Plaintiff further claims that she was denied additional compensation for new roles and responsibilities she assumed during the COVID-19 pandemic. (*Id.* ¶¶ 82-83). Plaintiff identifies in comparison multiple male employees who received additional compensation above their base salaries for taking on additional duties. (*Id.* ¶¶ 83-85).

With respect to her disability claims, Plaintiff first disclosed her disability to the District as "stress, anxiety" on August 7, 2020. (*Id.* ¶ 88). On December 29, 2020, Plaintiff submitted

FMLA documentation to the District requesting a medical leave of absence based on work-related anxiety and PTSD. (*Id.* ¶¶ 76, 94). As detailed *supra*, the District ordered Plaintiff to a Section 913 examination and denied reinstatement to Plaintiff after she was medically cleared.

On February 9, 2021, Plaintiff filed a complaint with the New York State Division of Human Rights based on gender and disability discrimination. (*Id.* ¶ 73).

## **STANDARD OF REVIEW**

### I.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.[2]

II.     <u>Documents Considered</u>

To the extent Defendants submit a number of extraneous documents for consideration in connection with their motion to dismiss, virtually none can be considered.

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit.").

Even if a document is not incorporated by reference into the complaint, the Court may still consider such document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*,

---

[2] Defendant suggests that this Court convert Defendants' motion to one for summary judgment predicated upon an attorneys' affirmation of hearsay and inadmissible documents which counsel believes eliminates all genuine issues of material fact–an utterly unfounded proposition. Even assuming the documents were in admissible form and mostly, they are not, they create too many issues of fact to be resolved at the motion to dismiss juncture.

622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also*, *Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-5600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019). "A plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

Where a document is not attached to the complaint or integral thereto such that it can be considered on a motion to dismiss, a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d).

The documents proffered by Defendants on this motion, introduced by an attorneys' declaration, include, *inter alia*, Plaintiff's correspondence with the Department of Labor, communications with the District, and payroll records, as well as a Section 75 hearing decision. (*See* Miranda Decl., Exs. B, G, H, J-M; *see also* Lucas Decl., Exs. A-C). Additionally, Plaintiffs proffer an email communication regarding the investigation and a copy of the FMLA Narrative. (*See* Glass Decl., Exs. 1-2). At this stage of the proceedings in the instant case, the Court declines to convert Defendants' motion to dismiss to a motion for summary judgment. The Court further declines to consider the documents annexed to Defendants' motion and Plaintiff's opposition as integral to Plaintiff's pleading, except for those specifically addressed *infra*.

<u>**ANALYSIS**</u>

I.     <u>Retaliation: First Claim for Relief</u>

Plaintiff's first claim for relief assert that Defendants retaliated against Plaintiff for reporting concerns about the District's response to COVID-19 to outside entities, in violation of the First Amendment. The Court first addresses whether Plaintiff has a constitutional claim under the First Amendment and then considers whether a *Monell* claim exists.

A.   *First Amendment Retaliation Claim*

With respect to the individual Defendants, the Court addresses the allegations of Plaintiff's first claim for relief. A plaintiff asserting a First Amendment retaliation claim must plausibly allege that: "(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). Defendants contend Plaintiff fails to plausibly allege each of the three prongs.

i.   First Amendment Protection

The protected status of speech presents a question of law. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). Defendants argue that Plaintiff does not plausibly allege that she is entitled to First Amendment protection, because Plaintiff's speech was related to her duties as Medical Director and was not made as a private citizen on a matter of public concern. (Def. Br. at 17).  The Court disagrees.

"[T]he First Amendment inquiry must proceed in two parts. 'The first component requires determining whether the employee spoke as a citizen on a matter of public concern.'" *Montero v. City of Yonkers*, 890 F.3d 386, 395 (2d Cir. 2018) (alteration omitted) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). With respect to this first step, the

Court considers: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir.2011) (citing *Garcetti*, 547 U.S. at 420-22). If the answer to either is no, the inquiry ends there. "If, however, both questions are answered in the affirmative, the court then proceeds to the second step of the inquiry . . . whether the relevant government entity 'had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer.'" *Matthews*, 779 F.3d at 172 (quoting *Lane v. Franks*, 573 U.S. 228, 237 (2014)). The Court conducts these inquiries in turn.

There are "two relevant inquiries to determine whether a public employee speaks as a citizen: (1) whether the speech falls outside of the employee's official responsibilities, and (2) whether a civilian analogue exists." *Montero*, 890 F.3d at 397 (citation, quotations marks, and alterations omitted). "Although the presence or lack of a civilian analogue may be of some help in determining whether one spoke as a citizen, the critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Id*. at 397-98 (citing *Lane*, 573 U.S. at 240); *see also Butts v. N.Y.C. Dep't of Educ.*, No. 16-CV-05504, 2018 WL 4725263, at *5 (E.D.N.Y. Sept. 28, 2018) (noting that the second inquiry "is not dispositive" and "the first inquiry is the critical one" (citing *Montero*, 890 F.3d at 397-98)). To answer that question, courts "examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012) (citations omitted).

The SAC alleges several communications that Plaintiff made as a private citizen outside the chain of command and in private communication channels. (SAC ¶ 114). Plaintiff allegedly spoke to a local government official, other parents in the District, the New Rochelle Police Department, county and state health departments, and attorneys to Governor Cuomo about her concerns regarding the District's COVID-19 response, as well as the misinformation being spread and other violations by the District. (*Id*.). At this stage, Plaintiff has plausibly alleged that her speech was outside the scope of her duties as Medical Director, namely, "establish[ing] procedures" related to contagious diseases and "monitor[ing] any epidemics that occur". (*Id*. ¶ 21).[3]

Further, Plaintiff plausibly alleges "civilian analogues" existed. A civilian analogue exists if the speech was "made through 'channels available to citizens generally.'" *Matthews*, 779 F.3d at 175 (quoting *Jackler*, 658 F.3d at 238). Because Plaintiff spoke via a call to the police, calls to local government officials and departments, and as a post on Facebook, among other channels, Plaintiff's speech has a civilian analogue.  Accordingly, at this stage, Plaintiff plausibly alleges that spoke as a private citizen.

To determine whether Plaintiff spoke on a matter of public concern, the Court assesses "the 'content, form, and context of a given statement, as revealed by the whole record.'" *Montero*, 890 F.3d at 399 (quoting *Jackler*, 658 F.3d at 235). Speech addresses a matter of public concern when "fairly considered as relating to any matter of political, social, or other concern to the community." *Id*. (quoting *Jackler*, 658 F.3d at 236) (citation omitted). Conversely,

---

[3] For example, when Plaintiff reported suspected negligence and child abuse by the District to the police department, she plausibly alleges that she was not "perform[ing] the tasks [s]he was paid to perform." *Woodlock v. Orange Ulster B.O.C.E.S.*, 281 F. App'x 66, 68 (2d Cir. 2008) (summary order) (alterations in original) (quoting *Garcetti v. Ceballos*, 547 U.S. at 422).

speech "calculated to redress personal grievances," *id*. (quoting *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999)), or principally focused on a personal issue "generally related to [the speaker's] own situation," *id*. (alteration in original) (quoting *Jackler*, 658 F.3d at 236), does not address a matter of public concern.

The COVID-19 pandemic is unquestionably a matter of public concern. Defendants' characterization of Plaintiff's speech as "internal disagreements about the subject of plaintiff's employment" is not accurate. (Def. Br. at 18). In addition to criticizing the District's decision to keep schools open, Plaintiff alleges that she spoke about, *inter alia*, the District's deliberate dissemination of misinformation about COVID-19, the District's negligence and/or child abuse, and issues with Superintendent Feijoo's leadership. (SAC ¶ 114). Specifically, she expressed concerns about "the accuracy of information being conveyed to the state" by Superintendent Feijoo. (*Id*.). Therefore, at this juncture, Plaintiff plausibly alleged her speech went beyond internal disagreements about her job duties and was on matters of public concern. Accordingly, the Court finds Plaintiff's speech was protected.

## ii.  Adverse Action

Defendants also contend that even if Plaintiff's speech is protected, she did not establish any adverse action taken against her as a result of the speech. (Def. Br. at 19).

The inquiry for a retaliation claim is "whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43-44 (2d Cir. 2019); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (inquiry is whether the action "could well dissuade a reasonable worker from making or

supporting a charge of discrimination"); *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004).

An adverse employment action is one that "would deter a similarly situated individual of ordinary firmness from exercising his or her . . . rights." *Washington*, 373 F.3d at 320 (internal quotation omitted); *see also Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (plaintiff must show the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").

Plaintiff alleges that, as a result of her speech, she was marginalized by leadership, prohibited from communication with staff, denied compensation for additional assignments outside the scope of her position, reassigned to home and stripped of all job responsibilities for 16 months, replaced by a consultant physician, and denied approval for summer work. (SAC ¶¶ 113-121). Additionally, Plaintiff asserts more recent allegations of adverse actions which include a salary cut of 54%. (*Id*. ¶ 108). Plaintiff has plausibly alleged adverse actions that would deter a similarly situated individual from exercising her right to speak against the District, irrespective of whether it dissuaded Plaintiff from continuing her own speech.  *See i.e.*, *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.").

### iii. *Causation*

Lastly, Defendants argue that the SAC fails to plausibly allege a causal connection between Plaintiff's speech and any adverse action. (Def. Br. at 20-21).

Plaintiff "may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)). The Second Circuit has no bright-line rule for what constitutes temporal proximity; some courts have deemed as little as three months too long to infer retaliatory motive, while others have found close enough gaps of as long as eight months. *See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554-55 (2d Cir. 2001) (collecting cases).

A significant portion of Plaintiff's protected speech occurred in March 2020. (SAC ¶114). Plaintiff alleges adverse actions were taken against her only days after her speech, including reducing her duties and prohibiting her from communicating with staff.  (*Id*. ¶¶ 29, 34). Plaintiff also alleges protected speech occurred in the months thereafter, including joining with her union colleagues to submit a letter of no confidence in Superintendent Feijoo's leadership in September 2020 and reporting violations regarding the District's vaccination plan in January 2021. (*Id*. ¶¶ 40, 48). Adverse conduct occurring after these events include Plaintiff being placed and kept on an unreasonably lengthy administrative leave and Plaintiff being replaced by an interim Medical Director. The Court finds this closely proximate in time, therefore satisfying the causation element.

Therefore, Plaintiff plausibly alleges a claim for retaliation in violation of the First Amendment against all Defendants, except for the District.

B.  *Monell* Claim

A school district may only face liability under § 1983 for constitutional violations pursuant to the well-established doctrine of municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *See Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 417 (E.D.N.Y. 2009) (applying *Monell* in the context of a school's liability under § 1983). Municipal liability under § 1983 requires a showing of a policy or custom. *Monell*, 436 U.S. at 694. Such a "policy or custom . . . need not be contained in an explicitly adopted rule or regulation." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). But "a conclusory allegation that [official] conduct constituted a custom, usage, practice, procedure or rule that deprived [plaintiff] of his constitutional rights [is not] sufficient to state a claim for municipal liability." *Byrd v. Metro. Transit Auth.*, No. 15-CV-01364, 2015 WL 4546718, at *3 (E.D.N.Y. July 28, 2015); *see Guzman v. United States*, No. 11-CV-05834, 2013 WL 5018553, at *6 (S.D.N.Y. Sept. 13, 2013) ("[M]erely recit[ing], without factual support, that the threats . . . to which [Plaintiffs were] subjected are the products of an unofficial policy, carried out by" school officials is not enough.). "[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere [government] employee," *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008), but a municipality may still be subject to *Monell* liability if a constitutional deprivation was caused by a person acting with final decision or policy-making authority on behalf of the municipality. *See Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003); *see also Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 452 (S.D.N.Y. 2004).

Defendants argue that Plaintiff fails to identify any District policy that would create liability under *Monell*. (Def. Br. at 27). The Court agrees. Plaintiff's allegations focus on

Superintendent Feijoo's retaliatory acts toward Plaintiff only, and the SAC is devoid of any allegations of a custom or policy. *See Smith v. Westchester Cty.*, No. 19-CV-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences" and "fail[ed] to provide any factual details" regarding others' experiences); *Oriental v. Vill. Of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contains only a detailed account of plaintiffs' own experiences").

As Plaintiff failed to plead the existence of a municipal policy that violated her First Amendment rights, the District is not liable under *Monell* with respect to the first claim for relief.

II.   New York Civil Service Law Claim: Second Claim for Relief

Under Section 75–b, "[a] public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information . . . which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action." N.Y. Civ. Serv. Law § 75–b(2)(a). A personnel action is defined as "an action affecting compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance." *Id*. § 75–b(1)(d).

"In order to state a retaliation claim under Section 75–b, a plaintiff must allege (1) an adverse personnel action; (2) disclosure of information to a governmental body [regarding an improper governmental action], and (3) a causal connection between the disclosure and the adverse personnel action." *Krzesaj v. New York City Dep't of Educ.*, No. 16-CV-02926, 2017 WL 1031278, at *11 (S.D.N.Y. Mar. 15, 2017). "Improper governmental action" is conduct

"which is in violation of any federal, state or local law, rule or regulation." N.Y. Civ. Serv. Law § 75–b(2)(a).

Plaintiff's Section 75–b claim is based upon substantially similar allegations as her First Amendment retaliation claim. As explained *supra,* adverse actions and a causal connection have been plausibly alleged. The only remaining question is whether Plaintiff pleads "disclosure of information to a governmental body [regarding an improper governmental action]." *Krzesaj*, 2017 WL 1031278 at *11. Here, Plaintiff alleges that she reported violations of state and federal law by the District to the New Rochelle Police Department, Westchester County and New York State health departments. (SAC ¶ 118). Therefore, Plaintiff sufficiently states a claim for retaliation under this statute.

Accordingly, Defendants' motion to dismiss the second claim for relief for retaliation in violation of N.Y. Civ. Serv. Law § 75–b is denied.

### III.   FMLA Violations: Third Claim for Relief

The Third Claim for Relief proceeds under the FMLA. Generally, the FMLA is meant "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, . . . to promote national interests in preserving family integrity" and "to entitle employees to take reasonable leave for medical reasons . . . ." 29 U.S.C. § 2601(b)(1)-(2). To this end, "the FMLA makes it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 800 (S.D.N.Y. 2018) (quoting 29 U.S.C. § 2615(a)). There are two types of private claims for relief under the

FMLA: interference and retaliation claims. *Smith*, 769 F. Supp. 2d at 463 (S.D.N.Y. 2011) (quoting *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)).

Within the third claim for relief, Plaintiff asserts both FMLA Interference and FMLA Retaliation claims against the District, Reed, Marrero, and Manning-Campbell. The Court considers each seriatim.

### A.  FMLA Interference

Plaintiff asserts that her FMLA rights were interfered with in that Mr. Reed, Ms. Reluzco, and Dr. Manning-Campbell failed to provide her with notification of her rights to FMLA leave, and in collaboration with Interim Superintendent Marrero, interfered with her return to work. (SAC ¶ 123). Plaintiff further alleges that false information was relayed to the Wage Hour Investigator, her protected health information was disclosed without authorization, and she was improperly requested for a fitness for duty examination. (*Id.*).

An FMLA interference claim requires Plaintiff to plead: "(1) that [she] is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the FMLA; (3) that [she] was entitled to leave under FMLA; (4) that [she] gave notice to the defendant of [her] intention to take leave; and (5) that [she] was denied benefits to which [s]he was entitled under the FMLA." *Smith*, 769 F. Supp. 2d at 465 (citing *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004)); *see also Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 447 (S.D.N.Y. 2017). Defendants challenge only the fifth element, arguing that Plaintiff has not pled she was "deni[ed] any leave time or benefits." (Def. Br. at 25).

With respect to Plaintiff's FMLA right to take leave, Plaintiff disagrees with Defendants' assertion that she had been on *uninterrupted* paid leave since her FMLA request on December 29, 2020 (Def. Br. at 27; Pl. Br. at 31). Plaintiff alleges that, upon requesting FMLA leave, she

was instructed to record her absences "as sick days, until further notice." (SAC ¶ 52). Plaintiff also alleges that nearly one month later, she had exhausted her sick and personal days and learned she would be put on "unpaid status". (*Id*. ¶ 56). However, Plaintiff does not allege that she was ever placed on "unpaid status." Plaintiff remained on paid administrative leave from January 29, 2021 until September 2022. (*Id*. ¶¶ 57, 110). Accordingly, viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff plausibly alleges that she was denied FMLA benefits and/or leave only for the approximately one-month period that she was made to use sick and personal days while her leave request was pending. It may turn out with the benefit of discovery and admissible evidence that Plaintiff suffered no loss here. But on the face of the pleadings, the damage claim is plausible.

Regarding Plaintiff's FMLA right to be reinstated after leave, Plaintiff argues that the District interfered with her FMLA rights by creating obstacles to her return to work—namely, false information being relayed to the Wage Hour Investigator, her protected health information being disclosed without authorization, and the fitness for duty examination (Section 913 evaluation). (*Id*. ¶ 123). This mandated Section 913 evaluation was not improper. *Kane v. Carmel Cent. Sch. Dist.*, No. 12-CV-05429, 2014 WL 7389438, at *8 (S.D.N.Y. Dec. 15, 2014) ("New York law specifically provides that a Board of Education is "empowered to require any person employed by the board . . . to submit to a medical examination to determine the physical . . . capacity of such person to perform . . . her duties.") (citing N.Y.S. Educ. Law § 913). However, Plaintiff's remaining allegations may amount to FMLA interference. She alleges that, despite being medically cleared to return to work, the District interfered with her right to be reinstated by falsely reporting to the DOL that Plaintiff was under a "pending disciplinary

investigation." (SAC ¶¶ 60, 72). The Court therefore finds that Plaintiff has sufficiently stated a claim for FMLA interference.

B. FMLA Retaliation

Plaintiff also claims that the District retaliated against her for filing a DOL complaint in March 2021 against the District, citing FMLA violations. (*Id.* ¶ 124).

An FMLA retaliation claim requires Plaintiff to "demonstrate [that]: (1) [she] exercised rights protected under the FMLA; (2) [she] was qualified for his position; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Kastrati v. Progress of Peoples Mgmt. Corp.*, No. 18-CV-06731, 2020 WL 6940991, at *5 (E.D.N.Y. Nov. 24, 2020) (citing *Potenza*, 365 F.3d at 168).

Defendants, on this claim, take issue only with the third element—they insist that Plaintiff has not pled an adverse employment action because she has been on uninterrupted paid leave since her FMLA request on December 29, 2020. (Def. Br. at 27). As discussed *supra*, Plaintiff pled that her paid leave did not begin until January 29, 2021, approximately 30 days after she made the FMLA request. (Pl. Br. at 31-32). The Court need not re-hash this issue, however, as Plaintiff alleged several other adverse actions: exclusion from communications with staff or engaging in activities related to her role as Medical Director, denial of inclusion in community town hall meetings, denial of appropriate recognition for her accomplishments, and unauthorized disclosure of her protected health information. (SAC ¶¶ 123-124). Plaintiff need not allege a concrete change in the terms and conditions of her employment in order to establish an adverse employment action. *See Millea v. Metro-North R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011). For the purposes of FMLA retaliation claims, an "adverse employment action" is "any

action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." *Millea*, 658 F.3d at 164. Viewing the facts in Plaintiff's favor, these acts could likely dissuade a reasonable worker from exercising her FMLA rights. Accordingly, Plaintiff plausibly alleges a claim for FMLA retaliation. Here too, discovery and admissible evidence may change the result; but for a motion to dismiss a complaint, the claim is plausible.

IV.   Discrimination and Disparate Pay Claims Based on Gender: Fourth, Fifth, and Sixth Claims for Relief

Plaintiff asserts claims for discrimination and unequal pay on the basis of gender in violation of Title VII, the Equal Pay Act, and New York State Human Rights Law ("NYSHRL"). The Court considers each seriatim.

A.   Gender Discrimination in Violation of Title VII

Plaintiff asserts her fourth claim for relief for gender discrimination in violation of Title VII against the District.

Title VII "makes actionable any form of sex-based compensation discrimination." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019) (citing 42 U.S.C. § 2000e-2(a)(1)). Claims under Title VII are subject to the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, at the motion to dismiss stage, only the first step—the plaintiff's burden to allege a *prima facie* case of discrimination—is at issue. *See Littlejohn*, 795 F.3d at 311.

"To establish a *prima facie* case of discrimination under Title VII . . . a plaintiff must allege that (1) she is a member of a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred

under circumstances giving rise to an inference of discrimination." *Malloy v. Pompeo*, No. 18-CV-04756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020). At the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (internal quotation marks omitted). "A common and especially effective method of establishing a *prima facie* case of discrimination" is "showing that the employer treated a similarly situated employee differently." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (internal quotation marks omitted). Defendants argue Plaintiff's gender discrimination claim should be dismissed on the basis that she has not sufficiently alleged similarly situated comparators. (Def. Br. at 22-24). The Court disagrees.

"To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all material respects." *Tyson v. Town of Ramapo*, No. 17-CV-04990, 2019 WL 1331913, at *15 (S.D.N.Y. Mar. 25, 2019) (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)); *see also McGuinness*, 263 F.3d at 54 ("[W]here a plaintiff seeks to establish [her] minimal *prima facie* case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."). Moreover, although, "[a]t the motion to dismiss stage" evidence of similarly situated comparators "is not necessary[,] . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Tyson*, 2019 WL 1331913 at *15 (citing *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011)); *see also Watson v. Geithner*, Nos. 09-CV-06624, 10-CV-3948, 10-CV-7282,

2013 WL 5420932, at * 10 (S.D.N.Y. Sept. 27, 2013) ("Whether employees are similarly situated is ordinarily a question of fact; however, if there are many distinguishing factors between plaintiff and the comparators, the court may conclude as a matter of law that they are not similarly situated." (citation and quotation marks omitted)).

With respect to Plaintiff's allegedly underpaid salary, she identified two male employees as comparators: Deepak Marwah ("Marwah"), Director of Visual and Performing Arts, and Brendan Gallivan ("Gallivan"), Director of World Languages K-12. (SAC ¶ 78). Plaintiff alleges that Marwah and Gallivan were similarly situated to her in that they held positions as "directors" in the District. (*Id.*). Plaintiff further alleged that these male comparators were offered 12-month positions, granted title upgrades from "supervisor" to "director," and received salaries commensurate with their "director" titles and experience. (*Id.* 78). In contrast, Plaintiff allegedly held the title of "director" but received a salary based on a "supervisor" role and which did not adequately reflect her level of experience. (*Id.* ¶¶ 77, 80). It is true that Plaintiff does not offer details about the male comparators' individual duties and responsibilities. However, in the Title VII context and "[a]t the motion to dismiss stage," evidence of similarly situated comparators "is not necessary." *Mosdos*, 815 F. Supp. 2d at 698. A plaintiff need only allege sufficient facts from which "a jury could ultimately determine that the comparators are similarly situated." *Id.* Plaintiff need "not plead a *prima facie* case of discrimination," *Swierkiewicz*, 534 U.S. at 515, but only "enough facts to state a discrimination claim that is plausible on its face," *Roman-Malone*, 2013 WL 3835117, at *4. "Although Defendants may ultimately be able to show that [Plaintiff's] comparators were not similarly situated . . . or that they did not have discriminatory intent, these questions should not be resolved at the pleadings stage." *Tyson*, 2019 WL 1331913 at *15 (citing *Kunik v. N.Y.C. Dep't of Educ.*, No. 15-CV-9512, 2017 WL 4358764, at *9

(S.D.N.Y. Sept. 29, 2017)). In the instant case, Plaintiff has named two individual comparators and alleged they were similarly situated to her in that the held director-level positions in the District, and unlike Plaintiff, were paid commensurate with their director title and level of experience. With respect to Plaintiff's claim that she was underpaid as the District's Medical Director because of her gender, the Court finds Plaintiff has pled sufficient facts to give rise to a plausible inference of discrimination based on gender.

Plaintiff also alleges gender discrimination in that she was treated differently than male employees because she did not receive additional pay for her increased roles and responsibilities. (SAC ¶¶ 81-86). Plaintiff claims that she acquired several new roles and responsibilities throughout the COVID-19 pandemic for which she was not compensated. (*Id*. ¶ 82). She also claims that the District failed to provide her with a stipend awarded to the previous Medical Directors. (*Id*. ¶ 81). Plaintiff identifies three male comparators who allegedly received additional compensation and/or stipends after receiving increased job duties or responsibilities: (i) Paul Santoro ("Santoro"), Districtwide male technology administrator, received a stipend for assuming additional job responsibilities while another administrator's position remained vacant (*Id*. ¶ 83); (ii) Juan Mendez ("Mendez"), Districtwide Supervisor of World Languages K-12, subject to Board agreement, was granted additional compensation above his base salary upon a new job appointment (*Id*. ¶ 84); and (iii) Marrero received additional compensation upon assuming the role as Interim Superintendent (*Id*. ¶ 85). Additionally, Plaintiff identifies Dr. Louis Corsaro as a comparator because he received compensation solely for COVID-related duties (*Id*. ¶ 86). Plaintiff plausibly alleges that the three male comparators—each of whom holds a leadership level position in the District—received compensation above their base salary as a result of increased job duties and/or responsibilities. Additionally, Plaintiff sufficiently alleges

that Dr. Corsaro received compensation for COVID-19 responsibilities, which she alleges constitute additional responsibilities in her role as Medical Director.

Overall, the Court finds these Plaintiff has, albeit barely, pled sufficient facts to allege a gender discrimination claim at the motion to dismiss stage. Defendants' motion to dismiss Plaintiff's fourth claim for relief for gender discrimination in violation of Title VII is therefore denied.

### B.  Violation of Equal Pay Act

Plaintiff asserts her fifth claim for relief on similar facts, alleging disparate pay in violation of the Equal Pay Act against the District.

The Equal Pay Act ("EPA") "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Craven v. City of New York*, No. 19-CV-01486, 2020 WL 2765694, at *7 (S.D.N.Y. May 28, 2020) (quoting *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 25 (2d Cir. 2019) (summary order)). Specifically, to prove a violation of the Equal Pay Act, a plaintiff must demonstrate that "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014) (internal quotation marks and alterations omitted). "A plausible [Equal Pay Act] claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job *content* was substantially equal." *Kairam*, 793 F. App'x at 26 (emphasis in original). "The standard is 'demanding,' and requires that a plaintiff 'establish that the jobs compared entail common duties

or content, and do not simply overlap in titles or classifications.'" *Dass v. City Univ. of New York*, No. 18-CV-11325, 2020 WL 1922689, at *6 (S.D.N.Y. Apr. 21, 2020).

Here, while she has alleged facts sufficient to establish a plausible Title VII disparate treatment concerning pay case, Plaintiff fails to allege that she is paid differently than an employee who performs equal work in violation of the EPA. *See Hernandez v. Premium Merch. Funding One, LLC*, No. 19-CV-1727, 2020 WL 3962108, at *9 (S.D.N.Y. July 13, 2020) ("Recently, the Second Circuit clarified that, compared to a plaintiff bringing an EPA claim, a Title VII plaintiff alleging a discriminatory compensation practice need not establish that she performed equal work for unequal pay. . . [r]ather, all Title VII requires a plaintiff to prove is that her employer discriminate[d] against [her] with respect to [her] compensation . . . because of [her] . . . sex."); *see also Xanthakos v. City Univ. of New York*, No. 17-CV-9829, 2020 WL 5026930, at *5 n.7 (S.D.N.Y. Aug. 24, 2020) ("Unlike the EPA . . . Title VII does not *require* a Plaintiff to establish that she performed equal work for unequal pay.") (emphasis in the original).

Plaintiff's Equal Pay Act claim fails because she does not allege any facts about actual job duties of the comparators discussed *supra* (Marwah, Gallivan, Santoro, Marrero, Mendez), nor does she provide any allegations regarding the job duties of Dr. Charles Coletti, a male consultant to the District referenced once in Plaintiff's allegations underlying the fifth claim for relief. (SAC ¶¶ 78, 83-85, 131). Rather, Plaintiff identifies their titles and makes vague allegations about their compensation. (*Id.*) These allegations do not provide the Court any basis to compare Plaintiff's job duties, skills, and experience with those of her comparators for Equal Pay Act purposes. Accordingly, Plaintiff fails to state an EPA claim based on comparison to these employees. *See Dass*, 2020 WL 1922689 at *6 ("[B]road generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice

[to state an EPA claim]"); *see also Solomon v. Fordham Univ.*, No. 18-CV-04615, 2020 WL 1272617, at *13 (S.D.N.Y. Mar. 17, 2020) (dismissing EPA claim where Plaintiff "has failed to plead enough of her and her comparator's job content to show that they are similarly situated"); *see also Eng v. City of New York*, No. 15-CV-01282, 2017 WL 1287569, at *4 (S.D.N.Y. Mar. 29, 2017), *aff'd*, 715 F. App'x 49 (2d Cir. 2017). Plaintiff does, however, allege that Dr. Corsaro was hired to "provide general services of an Interim Medical Director" (SAC ¶¶ 102, 104, 112). Accordingly, Plaintiff has sufficiently alleged Dr. Corsaro as a comparator concerning his job duties as compared to Plaintiff in her role as Medical Director.

With respect to Dr. Corsaro, however, Plaintiff's claim fails on the wage element. Plaintiff's alleges an EPA violation based on the fact that Dr. Corsaro "received a 200% increase in monthly compensation for his services from the 2021-22 school year to the 2022-23 school year." (SAC ¶ 131). However, Plaintiff does not make any comparative allegations about the rate of change, if any, in her own compensation between school years. Nor does Plaintiff assert a salary comparison as the basis for her EPA claim. The Court therefore has no basis to determine whether an actual pay differential existed during those years between Dr. Corsaro and Plaintiff.

Accordingly, Plaintiff does not meet the tougher EPA pleading standard and Defendants' motion to dismiss Plaintiff's fifth claim for relief for disparate pay in violation of the EPA is granted.[4]

---

[4] Plaintiff seeks in her Opposition leave to file a third amended complaint to address any deficiencies in her claims for relief. (Opp. at 8). As Plaintiff has already had two chances to amend her allegations, the Court declines to provide Plaintiff a third opportunity with respect to this claim for relief. "[A] busy district court need not allow itself to be imposed upon by the presentation of [Plaintiff's] theories" for a third time. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 258 (2d Cir. 2018).

C.  Gender Discrimination under New York State Human Rights Law

Plaintiff's sixth claim for relief for gender discrimination under NYSHRL is asserted against all Defendants based upon substantially similar facts as the fourth claim for relief for gender discrimination in violation of Title VII.

Until the NYSHRL's amendment in August 2019 (made effective as of October 11, 2019), claims for discrimination brought under the NYSHRL were subject to the same standard as Title VII discrimination claims. *Thacker v. HSBC Bank USA, N.A.*, No. 22-CV-07120, 2023 WL 3061336, at *3 (S.D.N.Y. Apr. 24, 2023) (citing *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016)). However, the August 2019 amendment to the NYSHRL "has put in place a more lenient standard of liability that has been likened to that of the [New York City Human Rights Law]." *Id.* (citing *Yost v. Everyrealm, Inc.*, No. 22-CV-06549, 2023 WL 2224450, at *11 (S.D.N.Y. Feb. 24, 2023)).

The 2019 amendment to the NYSHRL does not change the outcome here, as the Court found that Plaintiff has met the more stringent standard for gender discrimination in violation of Title VII, discussed *supra*. Accordingly, Plaintiff has plausibly alleged a claim for gender discrimination under NYSHRL and Defendants' motion to dismiss Plaintiff's sixth claim for relief for gender discrimination under NYSHRL is denied.

V.    Disability Discrimination Claims: Seventh and Eighth Claims for Relief

Plaintiff's seventh and eighth claims for relief allege disability discrimination in violation of the ADA and NYSHRL, respectively.

A.   Disability Discrimination Under ADA

Plaintiff's seventh claim for relief asserts a claim of disability discrimination in violation of the ADA against the District. Specifically, Plaintiff alleges that after sharing her diagnosis of anxiety and PTSD with the District, Defendants discriminated against her by failing to reasonably accommodate her disabilities and retaliating against her for seeking a reasonable accommodation. (SAC ¶ 135).

The three-part burden-shifting framework established in *McDonnell Douglas Corp.* is used to analyze discrimination claims under the ADA. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022). The plaintiff must first establish a *prima facie* case of employment discrimination based on a disability before the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged actions. *Id.*; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016).

A *prima facie* case of disability discrimination requires a plaintiff to establish that: (1) "[her] employer is subject to the ADA;" (2) "[she] is disabled within the meaning of the ADA or perceived to be so by [her] employer;" (3) "[she] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) "[she] suffered an adverse employment action because of [her] disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). Defendants argue that Plaintiff failed to plead facts supporting the second and fourth elements of this claim for relief. (Def. Br. at 13-15). The Court disagrees.

As for the second element, the ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §

29

12102(1); *see also Dipinto v. Westchester Cnty.*, No. 18-CV-00793, 2023 WL 1438721, at *4 (S.D.N.Y. Feb. 1, 2023). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Defendants insist that Plaintiff failed to plead facts establishing that she was disabled within the meaning of the ADA because "the SAC is entirely devoid of any allegations as to how this [disability] limited plaintiff's ability to engage in major life activities." (Def. Br. at 13).

However, Plaintiff alleges that she suffers from anxiety and PTSD. (SAC ¶¶ 76, 88). Additionally, Plaintiff's doctor noted in her FMLA request that in connection with her anxiety and PTSD, Plaintiff "is experiencing lack of sleep, fatigue, loss of appetite, myalgias. She requires a therapeutic break from her job functions to heal and prevent further impact on her physical and medical health." (Miranda Decl., Ex. K at 2).[5]

Viewing the facts in the light most favorable to Plaintiff and taking into account the note from Plaintiff's doctor, Plaintiff has sufficiently alleged her disability caused her to suffer from "lack of sleep" and "loss of appetite," both of which may constitute substantial limitations on the "major life activities" of sleeping and eating.[6]  At this stage, Plaintiff has plausibility alleged she has a disability under the ADA.

---

[5] The Court may consider Plaintiff's FMLA Request, attached to Defendants' Motion as Ex. K to the Miranda Decl., because it is integral to the Complaint and relied on by Plaintiff in asserting her claims for relief under the FMLA and ADA. (SAC ¶¶ 52, 94).

[6] The Court notes Second Circuit precedent holds that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage . . . and is not meant to be a demanding standard." *Kopchik v. Town of E. Fishkill, New York*, No. 18-1182-CV, 2018 WL 6767369, at *4 (2d Cir. Dec. 26, 2018) (citing 29 C.F.R. § 1630.2(j)(1)(i)) (internal quotation marks omitted). Thus, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (quoting § 1630.2(j)(1)(ii)).

With respect to the fourth element, Defendants argue that Plaintiff failed to allege that an adverse action was taken against her. (Def. Br. at 14-15). The Court rejects this argument. "An adverse employment action under the ADA refers to a 'materially adverse change in the terms and conditions of employment' that is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Pinto v. New York City Admin. for Children's Servs.*, No. 18-CV-01852, 2018 WL 4333990, at *9 (S.D.N.Y. Sept. 11, 2018) (quoting *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)); *see also Smith v. N. Shore-Long Is. Jewish Health Sys.*, 286 F. Supp. 3d 501, 525-26 (E.D.N.Y. 2018) ("Under the ADA, '[a] plaintiff suffers an adverse employment action when [s]he experiences a materially adverse change in the terms and conditions of employment.'" (quoting *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 147 (E.D.N.Y. 2015) (first alteration in original))). Such qualifying circumstances "include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Smith*, 286 F. Supp. 3d at 526 (quoting *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)).

Here, Plaintiff sufficiently alleged several adverse actions taken against her after submitting her FMLA request which disclosed her disability, including that she was stripped of her duties and replaced by an Interim Medical Director, prohibited from communicating with staff and marginalized from leadership, and denied the opportunity for compensable supplemental summer work. (SAC ¶¶ 47, 71, 98). These actions constitute significantly diminished material responsibilities.

Additionally, Plaintiff alleges that her administrative leave separating her from her work duties constitutes an adverse action. (Pl. Br. at 18). Defendants correctly point out that, as of

January 29, 2023, Plaintiff received full benefits and salary while on administrative leave. (SAC ¶ 57.) However, paid leave, in some circumstances, may rise to the level of an adverse action. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) ("The relevant question is therefore whether the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of employment. Paid suspension during an investigation could thus potentially be adverse if the employer takes actions beyond an employee's normal exposure to disciplinary policies."). Defendants argue this is not an adverse action because leave was necessary to their investigation into the December 4-5, 2020 incident. (Def. Br. at 15). Plaintiff argues in response that the length of her leave went beyond normal exposure to disciplinary policies, as evidenced by the fact that the investigation resulted in a finding that "a letter of reprimand should be imposed against [Plaintiff]" and termination of Plaintiff would be "so disproportionate to the offense committed as to be shocking to one's sense of fairness." (SAC ¶ 111; Pl. Br. at 28). Based on these allegations, the Court finds Plaintiff plausibly alleged that her more than a year and a half long administrative leave was an unreasonably disciplinary procedure which constituted an adverse action.

Accordingly, Plaintiff sufficiently states a claim for discrimination under the ADA

B.  <u>Disability Discrimination Under NYSHRL</u>

Plaintiff's eighth claim for relief alleges discrimination on the basis of disability in violation of the NYSHRL against all Defendants. "Discrimination claims under the NYSHRL are governed by the same legal standards as federal ADA claims." *Jones v. New York City Transit Auth.*, 838 F. App'x 642, 644 (2d Cir. 2021) (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 117 n. 1 (2d Cir. 2004)). The 2019 Amendment to the NYSHRL,

discussed *supra*, made the pleading requirements for NYSHRL claims more liberal and does not ultimately impact the Court's finding here. Given that the Court found Plaintiff plausibly pled a disability discrimination claim in violation of the ADA, for the purposes of this motion, Plaintiff has plausibly pled a claim for disability discrimination under NYSHRL.

Therefore, Defendants' motion to dismiss Plaintiff's seventh and eighth claims for relief for disability discrimination is denied.

VI.    Qualified Immunity

Defendants argue that the individual Defendants are shielded from liability under the doctrine of qualified immunity. (Def. Br. at 28-30).

While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 493 (S.D.N.Y. 2015) ("In order for the doctrine of qualified immunity to serve its purpose, the availability of qualified immunity should be decided 'at the earliest possible stage in litigation.'" (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991))). A 12(b)(6) motion based on qualified immunity may be granted if "the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d at 435-36). A defendant bears the burden of establishing that he is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent v. Yelich,* 718 F.3d 157, 166 (2d Cir. 2013)). Consequently, when a defendant raises a qualified immunity defense in a 12(b)(6) motion to dismiss, the defendant must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those

that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 App'x at 42 (quoting *McKenna*, 386 F.3d at 436).

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport,* 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his or her action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).

Here, the Court has already found that Plaintiff alleged viable claims for First Amendment retaliation, state law retaliation, FMLA interference and retaliation, Title VII gender discrimination, state law gender discrimination, ADA disability discrimination, and state law disability discrimination. The Court finds that Plaintiff's rights were "clearly established" for these claims for relief because the Supreme Court and/or Second Circuit have adequately "defined the contours of the right[s] with reasonable specificity," *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990), as discussed *supra*. Furthermore, Defendants fail to meet their burden of showing that their retaliatory or discriminatory actions were objectively reasonable. *See i.e. Ayyaz v. City of New York*, No. 19-CV-01412, 2021 WL 1225684, at *5 (S.D.N.Y. Mar. 31, 2021) (denying motion to dismiss on the basis of qualified immunity where "Plaintiff had the

clearly established constitutional right to be free from . . . sex discrimination, by a state actor, and that no reasonable person would believe the alleged actions of Defendants . . . towards Plaintiff were lawful . . . ").

Accordingly, the affirmative defense of qualified immunity may not be sustained at this juncture and predicated upon a reading of the complaint.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED as to the first claim for relief (First Amendment Retaliation) only insofar as it is alleged against the District, and the fifth claim for relief (Disparate Pay under Equal Pay Act) alleged against all Defendants. The motion is otherwise DENIED consistent with this Opinion.

Defendants are directed to file an answer to the complaint within 10 days of the date of this Order. The Court will thereafter docket a Notice of Initial Conference.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 48.

**SO ORDERED:**

Dated:   White Plains, New York
         July 21, 2023

_____
PHILIP M. HALPERN
United States District Judge